ZUPANCIC ET AL., APPELLANTS, v. CITY OF CLEVELAND, APPELLEE.

(No. 37034—Decided July 6, 1978.)

Mr. *Edward J. Kirk*, for appellants.
Mr. *Jack M. Schulman* and Mr. *Thomas A. Smith*, for appellee.

PARRINO, P. J. James Zupancic, age two and one-half, was struck by an automobile near 15247 Saranac Road, Cleveland, on June 9, 1969. The automobile was driven by Sandra Leibnitzer Essick.[1]

Plaintiffs-appellants, James and his father Lawrence Zupancic, filed a complaint for damages in the Cuyahoga Court of Common Pleas on March 18, 1975. Named as defendants were the city of Cleveland and the Penn-Central Railroad.

Appellants alleged in their complaint, in part, as follows:

"2. That the negligent conditions of the weeds and grass on the treelawn were the direct and proximate result [*sic*] of the accident herein in that because of the tall weeds and grass on said treelawn, a driver of a motor vehicle could not see the presence of a child two and

---

[1] This court affirmed a judgment against Ms. Essick in Case No. 34527, decided February 5, 1976. We affirmed the verdict of the jury finding that Ms. Essick was negligent in driving her automobile because of her excessive speed and defective brakes.

one-half (2½) years of age who was only thirty six (36) inches tall (the plaintiff, James Zupancic herein) and whereas the height of the weeds and grass on the tree-lawn bordering said street did obscure the vision of an operator of a motor vehicle of a small child and more specifically the plaintiff, James Zupancic, on said street.

"3. That the defendant, The City of Cleveland, negligently permitted the tall grass and weeds to grow to such a height after having due notice thereof and knew, or should have known, that such condition would be hazardous to small children crossing said Saranac Road and more specifically the plaintiff, James Zupancic, herein.

"4. That the defendant, Penn-Central Railroad, owned the property fronting on said Saranac Road and was responsible for the maintenance of said treelawn in front of said property; * * *."

Penn-Central Railroad was dismissed from the case without prejudice on July 24, 1975, for reasons that do not concern us here.

On April 7, 1976, the city of Cleveland filed a motion for summary judgment. Said motion, which was in effect a motion for judgment on the pleadings since it was not accompanied by any evidence permissible under Civil Rule 56(C), was granted by the trial court in an entry dated September 1, 1976, and filed September 8, 1976.

Appellants appeal from the order of the court assigning one error for review:

"The trial court erred in sustaining defendants' motion for summary judgment, as said ruling is contrary to law."

Because of the nature of the proceedings below, we assume that the city of Cleveland had notice of the condition of the treelawn on Saranac Road.

The determinative issue in this appeal is whether high weeds and grass on a treelawn which obscure the presence of a child who is crossing a public street are a nuisance within the meaning of R. C. 723.01 for which a municipality may be held liable in damages.

R. C. 723.01 provides:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

Although the "treelawn," "parkstrip," "parking," "parkway," and "grassplot" are not specifically mentioned in R. C. 723.01, it is clear that the treelawn is an area within the scope of the statute.[2] *Joseph* v. *Portsmouth* (1975), 44 Ohio St. 2d 155, 156, *citing Village of Barnesville* v. *Ward* (1911), 85 Ohio St. 1; *Hubler* v. *Dayton* (1938), 26 Ohio Law Abs. 679.

A holding that the treelawn is an area within the contemplation of R. C. 723.01 does not end our inquiry. R. C. 723.01, being in derogation of the common law principle that the state or its political subdivisions when in the exercise of a governmental function are immune from suit, must be strictly construed in favor of a governmental entity. *Geideman* v. *Bay Village* (1966), 7 Ohio St. 2d 79 (paragraph 2 of syllabus); *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71 (paragraph 4 of syllabus); *Lovick* v. *Marion* (1975), 43 Ohio St. 2d 171, 173. Moreover, municipal corporations are not insurers of the safety of their public ways. *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426 (paragraph 5 of syllabus); *Yackee* v. *Napoleon* (1939), 135 Ohio St. 344, 349.

Our analysis of past cases in Ohio leads us to conclude that a "nuisance," within the meaning of R. C. 723.01, must be the product of "a condition of the street itself" or of "a defective condition thereof." *Wooster* v. *Arbenz* (1927), 116 Ohio St. 281 (paragraph 3 of syllabus). The scope and application of R. C. 723.01 to streets and highways are limited to "the actual physical structure of

---

[2]Any language to the contrary in our case of *Dorothy S. Beebe* v. *City of Cleveland Heights* (January 10, 1967), No. 27833, unreported, is overruled.

the streets or highways and to the physical obstructions or hindrances to travel thereon." *Standard Fire Ins. Co.* v. *Fremont* (1955), 164 Ohio St. 344 (paragraph 3 of syllabus); *Gabris* v. *Blake, supra,*(paragraph 3 of syllabus); *Lohmann* v. *Cincinnati* (1960), 113 Ohio App. 353, 355.

A "defect" in the street refers to the actual physical conditions existing "in or on" the street itself, *Gabris* v. *Blake, supra,* and to the actual physical conditions "upon" and "above" the surface of the street. *Robert Neff & Sons* v. *Lancaster* (1970), 21 Ohio St. 2d 31 (syllabus).

Thus, a railroad bridge that provided a vertical clearance of only ten feet above the surface of a street was held to be a nuisance within the meaning of G. C. 3714 (R. C. 723.01). *Yackee* v. *Napoleon, supra.* When a livestock trailer collided with a tree limb that hung low over a street, the Supreme Court held that an actionable nuisance existed under R. C. 723.01. *Robert Neff & Sons* v. *Lancaster, supra.* In both *Yackee* and *Neff,* the flow of traffic was hindered by a physical structure or obstacle that was situated above the surface of the paved, traveled portion of the street.

While we assume that the overhanging limb in *Neff* was part of a tree that was growing in a treelawn adjacent to the street, the Supreme Court found the existence of a nuisance not because the tree was part of the treelawn, but because the limb interfered with the movement of tall vehicles. The tree limb was found to be a nuisance because it physically hindered the flow of traffic and not because it obscured the vision of the trailer driver.

To recover under R. C. 723.01 for injuries caused by a nuisance in the street, the nuisance must be a defective condition of the street itself. In *Lovick* v. *Marion, supra,* the plaintiff was walking on the paved portion of the street. As he approached a friend's automobile, his right foot slipped off the edge of the street and he fell down a gradually sloping apron which connected the edge of the street with a catch basin located about six feet from the edge of the pavement. In upholding the denial of a recovery to the plaintiff, the Supreme Court stated in its *per curiam* opinion at 43 Ohio St. 2d at 174:

"In the case at bar, the catch basin and drainage slope were *not part of the paved or traveled portion of the street*; they did not render the street unsafe for customary vehicular or pedestrian travel * * *." (Emphasis added.)

Similarly, in *Stanadard Fire Ins. Co.* v. *Fremont, supra*, the roots of a tree growing in a treelawn were damaged during the course of street repairs. Subsequently, the tree fell and damaged a house. In denying the municipality's liability for the damage to the house under R. C. 723.-01, the Supreme Court noted at 164 Ohio St. 349-350:

"The duty to remove the tree in question as an unsafe instrumentality, *located as it was outside the area of the 'street' itself* and not affecting travel on the street, continued to be a common law duty within a governmental function." (Emphasis added.)

In the present case, the tall weeds and grass on the Saranac treelawn near appellants' home were not part of the surface of the street. As a consequence, the tall weeds and grass were not an actual physical defect of the street itself.

Several reported cases describe defects in a treelawn which have subjected a municipal corporation to liability for personal injuries. In *Village of Barnesville* v. *Ward, supra,*[3] the plaintiff was held to have a valid cause of action where he tripped over a sagging wire barrier placed in the treelawn by the municipality.

The plaintiff in *Joseph* v. *Portsmouth, supra,* was injured by an iron stake which protruded three inches above the surface of the ground. The stake's presence was obscured from view apparently by tall grass.

In *Hubler* v. *Dayton, supra,* the plaintiff's foot was caught in a hole left by a broken and open tile. She was

---

[3]On a fact situation dissimilar to the present case, the Supreme Court stated in paragraph 2 of its syllabus:

"The trees, grass and flowers growing [on treelawns] and proper barriers placed around the same to protect them, are not obstructions or nuisances within the meaning of the statute requiring the city council to keep the streets of the municipality open, in repair and free from nuisance."

injured when she walked across the treelawn.

The above three cases indicate that liability under R. C. 723.01 attaches to a municipal corporation for a defect in a treelawn when the injury to the plaintiff occurs "on," "in," or "above" the treelawn itself.

The appellants did not allege in their complaint that Saranac Road was itself defective. Rather, the appellants only alleged that tall weeds and grass on the treelawn were the proximate cause of the injuries to James Zupancic. We hold that tall weeds and grass on a treelawn which obstruct the vision of travelers on a street do not constitute a defect or nuisance in the paved portion of the street itself within the meaning of R. C. 723.01. The trial court properly entered judgment for the defendant city of Cleveland because the appellants had not alleged the existence of an actionable nuisance within the meaning of the statute.

In *Wall* v. *Cincinnati* (1948), 150 Ohio St. 411, plaintiff approached a railroad viaduct in his automobile. On the viaduct at the time was a city steam street cleaner mounted on a truck. The steam cleaner, in performing its function, caused a dense cloud of steam to cover and completely obscure from view the steamer, its truck, and the city's workers.

Plaintiff passed into the cloud of steam believing that the cloud had been emitted by a railroad engine beneath the viaduct. He collided with the steamer's truck and was injured. In denying plaintiff a recovery for his injuries, the Supreme Court held in paragraph 3 of its syllabus:

"A qualified nuisance is not shown by the allegations of a petition from which it appears that a municipality was engaged in the performance of its statutory duty of caring for its streets *and there is no allegation showing a defective condition in the street itself.* (Paragraph three of the syllabus in the case of *City of Wooster* v. *Arbenz*, 116 Ohio St. 281, approved and followed.)" (Emphasis added.)

The Supreme Court continued at 150 Ohio St. at 415, 416-417:

"Furthermore, as stated by the Court of Common

Pleas, the nuisance complained of in the plaintiff's petition does not relate to a condition or defect in the street itself. * * *

"Hence, in the instant case this court is in agreement with the lower courts that the particular circumstances alleged in the plaintiff's petition do not show a qualified nuisance."

We cannot hold that the tall weeds and grass on the Saranac treelawn are a nuisance within the meaning of R. C. 723.01 in view of *Wall*.

Our reasoning finds support in 42 A. L. R. 2d 817, where it states that "[a] mere obstruction of the view of a traveler by some object, substance, or condition has been held not to constitute a defect in the way within the operation of the rules and provisions imposing liability for injuries caused by defects. 25 Am Jur 784, Highways §500."

The above annotation quotation is further supported by cases from other jurisdictions.

The following cases held that a growth of weeds, brush, and small trees which obstructed the vision of vehicular drivers on public roads was not a "defect" in the road itself for purposes of attaching liability for damages to a governmental entity. *Bradshaw* v. *City of Seattle* (Wash. 1953), 264 P. 2d 265, 269-270; *Ynsfran* v. *Burkhart* (Tex. Civ. App. 1952), 247 S. W. 2d 907, 910-911; *Owens* v. *Town of Boonville* (Miss. 1949), 40 So. 2d 158, 159; *Sylor* v. *Irwin* (S. Ct. N. Y. 1970), 308 N. Y. S. 2d 937, 940.

In *Bohm* v. *Racette* (1925), 118 Kan. 670, 236 P. 811, a hedge blocked the vision of two drivers at an intersection of two roads. Section 68-301 of the Revised Statutes provided that any person injured by "any defective bridge, culvert, or highway, may recover such damage from the county. * * *" In denying recovery to the plaintiffs, the Supreme Court of Kansas stated at 236 P. at 812-813:

"Plaintiffs argue that the high hedge was a defect in the highway within the meaning of that statute. With that argument the court cannot agree. The hedge was no part of the highway. So far as the highway was concerned it did not matter whether there was a hedge there or not.

\* \* \* A defect in a highway is something that interferes with movement over it. Roads in good condition made dangerous by something on the sides of them are not for that reason defective within the meaning of the statute on which the plaintiffs rely. \* \* \*''

Similarly, in *Stanley* v. *South Carolina State Highway Dept.* (S. C. 1967), 153 S. E. 2d 687, an intersectional collision was allegedly caused by a heavy growth of underbrush which obstructed the vision of two drivers. Section 33-229 of the 1962 Code of Laws provided an injured plaintiff an action for damages resulting from ''a defect in any State highway, \* \* \*.'' The South Carolina Supreme Court wrote at 153 S. E. 2d at 689:

''The broad general rule may therefore be deduced from our cases that a defect in a highway, within the meaning of the statute, is any physical condition of the improved portion thereof, or the existence of such condition on or overhanging the right of way, which makes the use of the improved portion of the highway unsafe and dangerous to a traveler exercising due care.

''The complaint alleges no defect or obstruction in the traveled portion of the State highway or that there was any condition existing therein that in any way affected the normal operation of vehicles over it. \* \* \*''

To allow recovery to appellants in the present case might subject governmental entities to numerous suits for damages where a driver's vision had been obstructed by an object or thing found in or on a treelawn, such as a tree, a telephone pole, a pile of snow or dirt, or even a garbage can. The above objects, as well as parked vehicles, can easily obscure the presence of a small child who attempts to cross the street. To require a muncipal corporation to eradicate all obstruction to drivers' vision would impose an impracticable burden on it.[4] *Cf. McCave* v. *Canton*

---

[4]We note that R. C. 5579.04 provides in part that ''\* \* \* street commissioners of each municipal corporation, between the first and twentieth days of June, \* \* \* shall destroy all brush, briers, burrs, vines, Russian, Canadian, or common thistles, or other noxious weeds, growing within the limits of a \* \* \* street, \* \* \* within their jurisdiction.'' Aside from the fact that the injuries to James Zupancic occurred on June 9,

(1942), 140 Ohio St. 150, 153 (removal of snow from miles of city sidewalks) ; *Mills* v. *Springfield* (App. 1956), 75 Ohio Law Abs. 150, 156 (snow removal).

The courts of appeals have discussed several of the above obstructions to vision. In *Galluppi* v. *Youngstown* (1936), 55 Ohio App. 331, the presence of an adult pedestrian was obstructed by a parked municipal truck. An automobile driver swung around the truck in order to proceed. The automobile struck the pedestrian. In denying recovery to the pedestrian, the court noted in paragraph 2 of its syllabus and at 55 Ohio App. at 335-336:

"The mere parking of a municipally owned motor truck by an employee of the municipality so that it obstructs the view of a pedestrian in crossing a street does not constitute a nuisance within the meaning of Section 3714, General Code. * * *

"* * * Whether the truck with the water tank thereon had been placed in the street by the city or by some private individual, we can not see how the placing of a truck at the place alleged in the petition could possibly be construed as a nuisance in the street. * * *"

In *Johnson* v. *Wooster* (1967), 10 Ohio App. 2d 163 and *Hindman* v. *Akron* (1938), 30 Ohio Law Abs. 27, the courts rejected the argument that piles of dirt, thrown up as part of municipal construction projects, were nuisances because they obstructed the vision of motorists.

The injuries sustained by James Zupancic are unfortunate. But under our reasoning above, the city of Cleveland is not liable to appellants in damages because the tall weeds and grass on the treelawn near 15247 Saranac Road are not a defect or nuisance within the meaning of R. C. 723.01.

The judgment of the trial court sustaining the city's motion for summary judgment is affirmed.

*Judgment affirmed.*

JACKSON and KRUPANSKY, JJ., concur.

---

1969, we conclude that R. C. 5579.04 is a statute intended to protect agricultural interests. R. C. 5579.04 is not a safety measure intended to protect the travelling public. *Cf. Hidalgo* v. *Cochise County* (1970), 13 Ariz. App. 27, 474 P. 2d 34; *Sylor* v. *Irwin, supra,* at 939-940.