WINWOOD, ADMR., APPELLANT, *v.* CITY OF DAYTON, APPELLEE.

[Cite as Winwood *v.* Dayton (1988), 37 Ohio St. 3d 282.]

(Nos. 87-1319 and 37-1386—Submitted May 16, 1988—Decided July 6, 1988.)

*Louis & Froelich Co., L.P.A.,* and *Jeffrey E. Froelich,* for appellant.

*Freund, Freeze & Arnold, Neil F. Freund* and *Jane M. Lynch,* for appellee.

DOUGLAS, J. The issue presented by this cause is whether a municipality is liable in tort for damages alleged to be caused by the lack of traffic control devices at an intersection. We hold that no such liability may be imposed.

In *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228, this court partially abolished the judicially created doctrine of municipal immun-

ity. *Id.* at paragraph one of the syllabus. This immunity was preserved, however, for "* * * those acts or omissions involving * * * the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. * * *" *Id.* at paragraph two of the syllabus.

Appellant argues that a municipality's decision not to install traffic control devices at a particular intersection is not a "basic policy decision" involving the exercise of "a high degree of official judgment or discretion * * *" within the meaning of *Enghauser, supra.* Citing this court's subsequent decision in *C & D Partnership* v. *Gahanna* (1984), 15 Ohio St. 3d 359, 15 OBR 480, 474 N.E. 2d 303, appellant contends that the exception to liability described in *Enghauser* was reserved for "policymaking activities * * * at the heart of municipal governance * * *." *C & D Partnership* at 364, 15 OBR at 484, 474 N.E. 2d at 307. Appellant submits that the decision of whether to place traffic control devices at an intersection does not rise to the level of basic policy, but rather involves simple day-to-day decision making. We do not agree.

In *C & D Partnership, supra,* this court was confronted with the task of determining whether a municipality's action in reviewing and approving a subdivision plat was entitled to immunity under the discretionary-function exception set forth in *Enghauser.* In finding that such immunity did exist, this court examined the role of the municipality in its review of subdivision plats. We determined that the city's function was not merely to "rubber stamp" all plats found to be in com-

pliance with the requisite technical requirements. Additional considerations, such as the municipality's environmental concerns, safety factors, and policies as to future growth would affect the city's decision to approve or reject the plat. *Id.* at 362-363, 15 OBR at 482-483, 474 N.E. 2d at 306-307. Thus, the municipality's decision called for the exercise of a high degree of discretion and, therefore, immunity attached.

Similarly, the case before us today concerns a municipal decision requiring the consideration of basic policy and the exercise of independent judgment. The factors involved in determining the necessity or advisability of installing traffic control devices include the regulation of traffic patterns and traffic flow at the specific location and in surrounding areas, fiscal priorities, safety, and various engineering considerations. Thus, the decision to install or to forgo traffic control devices at a particular intersection is a planning function, involving basic policy considerations and the exercise of a high degree of official discretion. It follows, therefore, that appellee is immune from tort liability under *Enghauser. Id.* at paragraph two of the syllabus.

We find further support for our conclusion in the provisions of the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways (12 Rev. 1982), prepared by the Ohio Department of Transportation. This manual, which sets forth the standards for the installation and maintenance of traffic control devices in this state, is binding upon local authorities by virtue of R.C. 4511.11.[1] Section 1C of the manual provides in pertinent part:

---

[1] R.C. 4511.11 provides in pertinent part:

"(A) Local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the department of transportation manual and specifications for a uniform system of traffic control devices, adopted under sec-

"The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. Except for sections of this Manual that mandate the installation of a traffic control device,[2] *it is the intent that the provisions of this Manual be standards for traffic control device installation, but not a requirement for installation.* Qualified engineers are needed to exercise the engineering judgment inherent in the selection of traffic control devices, just as they are needed to locate and design the roads and streets which the devices complement.* * *" (Emphasis added.)

It can readily be seen from this language that those responsible for formulating standards for traffic control devices specifically refused to set forth inflexible rules regarding the installation of such devices, recognizing that a great deal of independent judgment is involved in such a decision. If the municipality were made subject to liability for its decision not to install a particular device, the free exercise of its discretion in this area would be chilled, lessening its ability to deal effectively with the difficult policy issues confronting it on a daily basis. *C & D Partnership, supra,* at 364, 15 OBR at 484, 474 N.E. 2d at 307.

Appellant's reliance on *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787, is misplaced. There, municipal immunity was held not to apply to the city's design and placement of traffic control devices. The plaintiffs in *Strohofer* contended that these devices were placed in a manner which confused motorists, thereby creating a hazard. *Id.* at 119, 6 OBR at 178, 451 N.E. 2d at 788. Thus, the municipalities had already made the initial policy decision that such devices were advisable at the locations in question and had implemented that decision by installing signs or traffic lights. By contrast, appellant in the instant cause is attempting to impose liability on a city for its decision not to install such devices. This decision is a discretionary function based on policy considerations, while steps such as the design, placement, repair and maintenance of traffic control devices constitute the mere implementation of a policy decision. Such implementation involves very little discretion or independent judgment, and is therefore not immune.

Appellant cites additional cases from this court holding that while a municipality may not be held liable for acts or omissions involving the exercise of a legislative, judicial or discretionary function, liability may attach where a decision has been made to engage in a certain activity or function. See, *e.g., Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199, 9 OBR 511, 459 N.E. 2d 877 (municipality not immune for negligent operation of bookmobile). In these cases, municipalities were not accorded immunity for the negligent acts of their employees in the performance of their activities. See *O'Brien* v. *Egelhoff* (1984),

---

tion 4511.09 of the Revised Code upon highways under their jurisdiction as are necessary to indicate and to carry out sections 4511.01 to 4511.76 and 4511.99 of the Revised Code, local traffic ordinances, or to regulate, warn, or guide traffic."

[2] There is no evidence in the record that any traffic control device was mandated by the manual at the intersection in question. Appellant's own expert conceded in a deposition that appellee had not violated any provisions of the manual, or any other rules or regulations within the state of Ohio.

9 Ohio St. 3d 209, 9 OBR 520, 459 N.E. 2d 886. We find these decisions to be completely distinguishable from the case before us today. *Mathis* and *O'Brien,* as well as the remaining cases cited by appellant,[3] involved alleged negligence in the implementation of basic policy decisions or in the actual performance of activities engaged in by the city. They did not involve an attack on the wisdom of the initial policy decision, as does the instant cause.

Finally, appellant argues that appellee violated its duty under R.C. 723.01, which requires municipalities to keep streets "* * * open, in repair, and free from nuisance." Appellant contends that the lack of traffic control devices at the intersection in question constituted a nuisance. We reject this contention. First, appellant adduced no evidence in response to appellee's motion for summary judgment which would tend to show the existence of a nuisance.[4] Second, this court has recently held that a municipality is immune from tort liability for failing to determine that a specific entity constitutes a nuisance. *Mitchell* v. *Cleveland Elec. Illum. Co.* (1987), 30 Ohio St. 3d 92, 30 OBR 295, 507 N.E. 2d 352, paragraph two of the syllabus.

Accordingly, based on the foregoing, we hold that where the installation of traffic control devices by a municipality is discretionary pursuant to the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, WRIGHT and H. BROWN, JJ., concur.

LOCHER and HOLMES, JJ., concur in the syllabus and judgment only.

---

[3] *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, 9 OBR 516, 459 N.E. 2d 881; *Marrek* v. *Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St. 3d 194, 9 OBR 508, 459 N.E. 2d 873.

[4] Appellant did proffer several letters directed to city officials expressing concern over the safety of the intersection in question. However, the trial court expressly rejected this material on the basis that it was not of the evidentiary quality required by Civ. R. 56.