DEFINI, Exr., Appellant and Cross–Appellee,

v.

CITY OF BROADVIEW HEIGHTS, Appellee and Cross–Appellant.

[Cite as *DeFini v. Broadview Hts.* (1991), 76 Ohio App.3d 209.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59073.

Decided Nov. 12, 1991.

*Thompson, Hine & Flory, Thomas A. Heffernan* and *Theodore E. Laszlo,* for appellant.

*Arter & Hadden, Wayne J. Belock* and *Chris L. Hurlbut,* for appellee.

HARPER, Judge.

## I

Appellant, Vincent J. DeFini, the Executor of the Estates of Frank and Josephine Bonaiuto, appeals from the judgment of the Cuyahoga County Court of Common Pleas which granted appellee, city of Broadview Heights' motion for summary judgment. Appellant filed a negligence action against Greg Kobasic ("Kobasic") on April 6, 1987 and later amended his complaint to include the city as a party. Appellant alleged that the city breached its statutory duty to keep the streets open, in good repair and free from nuisance.

The city filed a motion for summary judgment on June 26, 1989, which was granted by the trial court. Appellant filed a motion for relief from judgment on October 19, 1989, alleging that the clerk of courts did not send him a notice of the trial court's summary disposition of his case against the city as required by Civ.R. 58(B). Appellant, in his motion, argued that the clerk's

failure to notify him of the judgment deprived him of his right to file a timely appeal.

On December 6, 1989, the trial court granted appellant's motion to vacate and reinstate its judgment to permit appellant to file a timely appeal. Appellant subsequently filed his appeal and for the reasons that follow, we affirm.

## II

The Novaks, who are residents of Broadview Heights, erected a Christmas display on their East Royalton Road (Route 82) property in December 1987. The Novaks have put on the Christmas display for a number of years prior to the 1987 display. The display was visible from the road. The record shows that people travelling on Route 82 often slow down to admire the display as they continue to drive to their destination. Many others travelling would park across the road from the display and either view it from there or walk across Route 82 to view the display from the Novaks' driveway.

On December 27, 1987, at approximately 10:20 p.m., Kobasic, while driving eastbound on Route 82, struck and killed Mr. and Mrs. Bonaiuto as they crossed the street to view the display. The record shows that Kobasic was familiar with Route 82 and frequently used it to get to and from his job at Stancato's Restaurant from his home in North Royalton.

Kobasic, in his deposition testimony, stated that the weather on the night in question was dry and visibility was good. Kobasic was familiar with the Christmas display and was aware that people stopped by and often crossed Route 82 to view the display. Kobasic stated that he noticed a car pulled off to the right side of the road with its lights blinking on the night of the accident. He slowed down and focused on the road and was not distracted by the Christmas display. His headlights were on, and his vision was not blocked. Kobasic saw the Bonaiutos for a split second before they were struck. He stated that the accident occurred so suddenly that he did not have the opportunity to swerve or apply his brakes. Kobasic's car was mechanically fit for travel on the road on the evening in question. Kobasic stated that the street was not lighted and was dark.

## III

The city of Broadview Heights cross-appealed, challenging the trial court's grant of appellant's motion to vacate and reinstate its judgment. Since the city's cross-appeal touches on the issue of this court's jurisdiction to hear this appeal, we shall first address its cross-appeal. The city, in its cross-appeal, states that:

"The Trial Court Erred in Vacating Its August 29, 1989 Journal Entry Where the Trial Court's Docket Indicates That Plaintiff–Appellant Received Proper Notice of The Entry."

The record shows that the court of common pleas granted appellee's motion for summary judgment on August 28, 1989. The court's judgment entry was journalized on August 29, 1989. The clerk of courts never entered the judgment into the court's computer journal until November 24, 1989.

The clerk of court's office sent out a post card notice to appellant after it entered the judgment in the court's computers. The record shows that appellant did not receive the post card until November 28, 1989. Appellant filed a motion pursuant to Civ.R. 60(B), which was granted.

 Appellee argues that the trial court erred by granting appellant's motion to vacate and reinstate a prior judgment after appellant was given proper notice of the judgment in accordance with Civ.R. 58. We disagree. Civ.R. 58(B) states in pertinent part:

"Notice of filing. When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete. The failure of the clerk to serve notice does not affect the validity of the judgment or the running of the time for appeal except as provided in App.R. 4(A)."

In *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St.3d 80, 523 N.E.2d 851, at paragraph one of the syllabus, the Ohio Supreme Court held that:

"The right to file an appeal, as it is defined in the Appellate Rules, is a property interest and a litigant may not be deprived of that interest without due process of law."

The court continued at 81, 523 N.E.2d at 853:

"We stated in *Moldovan v. Cuyahoga Cty. Welfare Dept.* (1986), 25 Ohio St.3d 293, 295, 25 OBR 343, 345, 496 N.E.2d 466, 467, that '[t]he opportunity to file a timely appeal pursuant to App.R. 4(A) is rendered meaningless when reasonable notice of an appealable order is not given.' "

The *Atkinson* court went further and promulgated the procedures that should be followed in order to comply with Civ.R. 58(B) when it held at 86, 523 N.E.2d at 856–857 that:

"For our purposes, we believe that the following rules will meet the due process requirements contemplated by *Mullane v. Central Hanover Bank &*

*Trust Co.* (1950), 339 U.S. 306 [70 S.Ct. 652, 94 L.Ed. 865]. These rules are to be applied in all courts of this state in the exercise of civil jurisdiction at law, or in equity, except as stated in Civ.R. 1(C). The rules are:

"A. Within three days of the entry of any final appealable judgment or order, the clerk of courts shall serve a notice of the entry in any manner provided in Civ.R. 5, upon every party who is not in default for failure to appear.

"B. The clerk shall make a notation in the case docket indicating that the required service has been made.

"C. Once the clerk has served notice of the entry and entered the appropriate notation in the docket, the notice shall be deemed to have been served. The failure of any party to receive such notice shall not affect the validity of the judgment or the running of the time for appeal."

Therefore, the procedures as enunciated by the *Atkinson* court must be mandatorily complied with in order to satisfy the due-process requirements of what constitutes proper notice of a final appealable order. Appellee argues that appellant had notice pursuant to the *Atkinson* provisions because the court's execution docket is stamped "NOTICE ISSUED." This narrow reading of the *Atkinson* holding conveniently ignores the central element of the decision which is that there must be a service. "The clerk of courts *shall serve a notice* of the entry in any manner provided in Civ.R. 5, upon every party who is not in default for failure to appear." (Emphasis added.) *Id.* The controlling element in the decision is not the notation in the case docket. The case docket notation is evidence of service, though not conclusive evidence, since the appellant can aver that service was not made. The purpose of the requirement in *Atkinson* is to make a record for allegations of failure to serve. See, *e.g., Kertes Ent., Inc. v. Orange Village Planning Zoning Comm.* (1990), 71 Ohio App.3d 151, 152–153, 593 N.E.2d 306, 306–307 (absence of notation is evidence that service was not made). Where a notice is not first served on the parties, a thousand notations on the case docket is insufficient to satisfy the *Atkinson* requirement. Therefore, we hold as a matter of law that the requirements of Civ.R. 58(B) and the procedures in *Atkinson* are met only when the clerk of courts (1) serves a notice of the entry of a final appealable judgment or order within three days of the entry pursuant to Civ.R. 5 upon every party who is not in default for failure to appear, and (2) the clerk makes a notation in the case docket that such service has been made. The validity of the judgment or the running of the time for appeal is effective when the clerk satisfies the above requirements. Any party's failure to receive such notice after it is served shall not be used to challenge the validity of the judgment or as a defense for failure to file a timely appeal.

In the within case, appellee presented an affidavit sworn by Linda Graves, who is an employee of the court of common pleas in the Central Scheduling Department. She stated that she had recently left the department of the clerk's office from where mail notices are sent to parties. She further stated that:

"I escorted Mr. Heffernan [counsel for appellant] to the first floor Clerk's Office to determine whether or not a post card notice had been issued on that ruling.

" * * *

"4. After having checked the computer entries, the microfiche records pertaining to post card mailing notices, and the civil post card proof sheet, an official record of the Common Pleas Court of Cuyahoga County, I determined that no mail service had been issued on that ruling."

Appellee argues that the sworn affidavit of Graves does not have any evidentiary value because she no longer works in the department of the clerk's office responsible for mailing post cards. We disagree. Graves' knowledge of the department where she recently left, coupled with the fact that she checked the computer entries, the microfiche records, and the civil post card proof sheet—the same records which would reveal the same result if checked by anybody in the clerk's office responsible for mailing the post cards—is sufficient to hold that such mail was not sent. There is no evidence that the records checked by Graves, to verify whether the post cards were mailed, are made available to those not authorized to assess them. Absent evidence to the contrary, appellant's allegation that he did not receive notice of the trial court's final judgment until November 28, 1989 has merit. The trial court's grant of appellant's motion to vacate and reinstate the judgment to allow appellant sufficient time to appeal was proper. See *Gaeta v. Cleveland* (1988), 39 Ohio St.3d 338, 530 N.E.2d 1316; see, also, *Abbott v. Stepanik* (1989), 43 Ohio St.3d 128, 539 N.E.2d 157. Appellee's assignment of error is overruled.

However, on the authority of *Atkinson v. Grumman Ohio Corp., supra,* the interest of judicial economy and on the authority of App.R. 4(A), it was not necessary to file a Civ.R. 60(B) motion. Appellant could have filed his notice of appeal within thirty days from the date the notice of the trial court's judgment was served on him.

## IV

Having disposed of the cross-appeal, we now turn to appellant's assignment of error, which states that:

"The Trial Court Erred to the Prejudice of the Plaintiff in Granting the Defendant City of Broadview Heights' Motion for Summary Judgment in as Much as There Were Genuine Issues of Material Fact which Remained to be Litigated."

In addition to appellant's assignment of error, the following issues are presented for review by appellant:

"Whether the Trial Court erred in granting defendant City of Broadview Heights' Motion for Summary Judgment where an issue of fact remains as to the existence of a nuisance under Ohio Revised Code Section 723.01.

"Whether the Trial Court erred in granting defendant City of Broadview Heights' Motion for Summary Judgment where an issue of fact remains as to the City's actual or constructive knowledge of the nuisance.

"Whether the Trial Court erred in granting defendant City of Broadview Heights' Motion for Summary Judgment where an issue of fact remains as to reasonableness and sufficiency of the measures taken by The City to abate the nuisance."

Appellant argues that there were genuine issues of material fact which preclude summary judgment.

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273.

It is a well-settled rule of law that the burden of showing that there is no issue of material fact to be litigated rests on the party moving for summary judgment. *Harless v. Willis Day Warehouse Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Appellant, in his complaint, alleges that the city was liable for the death of the Bonaiutos because it either created a nuisance or allowed one on the city roadway. Appellant cited R.C. 723.01 as his authority. R.C. 723.01 reads:

"Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corpora-

tion, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

R.C. 723.01, requiring municipalities, *inter alia*, to keep their streets, highways and public grounds open, in repair and free from nuisance, embraces only those conditions affecting the actual physical conditions existing in or on highways, streets and public grounds themselves. *Gabris v. Blake* (1967), 9 Ohio St.2d 71, 38 O.O.2d 199, 223 N.E.2d 597; *Wooster v. Arbenz* (1929), 116 Ohio St. 281, 156 N.E. 210; *Standard Fire Ins. Co. v. Fremont* (1955), 164 Ohio St. 344, 58 O.O. 130, 131 N.E.2d 221.

Appellant has failed to show that the city either created an obstruction or negligently or carelessly permitted a potential and unreasonable risk of harm which, in due course, resulted in an injury to a user of a city roadway. *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724. The Christmas display erected on private property which appellant urges this court to consider as a nuisance is no different from everyday distractions individuals encounter when driving through downtown Cleveland streets where there are monuments and shopping displays. We cannot hold as a matter of law that the city is mandated by R.C. 723.01 to serve as a lookout for those driving on Ohio streets. The responsibility to lookout when driving is on the driver and outside an obstruction created by the city or allowed to be created by the city on *its roadways* action on negligence does not lie. See *Zupancic v. Cleveland* (1978), 58 Ohio App.2d 61, 63, 12 O.O.3d 213, 214, 389 N.E.2d 861, 862. In the within case, the city of Broadview Heights cannot be held negligent for Kobasic's failure to properly look out for persons crossing the roadway resulting in the death of the Bonaiutos.

■ Appellant contends that:

"There is a factual dispute as to just what constituted the nuisance, whether it was the lack of street lighting in the area, the illegally parked car in the berm, the congested nature of the roadway every night during the holiday season, or the Christmas light display itself."

It is settled law in Ohio that:

"Where the installation of traffic control devices by a municipality is discretionary pursuant to the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices." *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, syllabus.

This court cannot mandate by legal decision what the legislature considers a free exercise of a municipality's discretionary authority and allow citizens to use the courts to force elected officials to act in areas where citizens can use

their powers as voters to effect a change. Installation of lights on city streets is better suited by direct pressure on elected officials by citizens than by using the courts to second guess where and when street lights should be installed by the city. Broadview Heights' failure to install a street light on its roadway is neither the proximate cause of the death of the Bonaiutos nor is it actionable as a nuisance. This court cannot interfere with the city's exercise of its executive or planning function which involves the making of a basic policy decisions unless such decisions constitute a danger to its citizens. Therefore, Broadview Heights is immune from suit for its failure to install a street light. *Enghauser Mfg. Co. v. Erikson Engineering Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228. See, also, *Winwood, supra.*

Appellant's argument that the illegally parked car could have contributed to the nuisance is equally unpersuasive. First, we have failed to find any nuisance either absolute or qualified in the within case. Second, according to the Ohio Supreme Court in *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242, syllabus:

"1. Pursuant to R.C. 723.01, illegally parked cars located on the side of a highway, which contribute generally to traffic congestion, do not constitute a nuisance giving rise to municipal liability.

"2. The decision to install or forgo installation of traffic signs involves a high degree of official discretion. (*Winwood v. Dayton* [1988], 37 Ohio St.3d 282, 525 N.E.2d 808, followed.)

"3. The decision to enforce certain traffic ordinances regarding the parking of automobiles does not create a special duty in and of itself, and a municipality shall generally not be held liable for failing to enforce such ordinances. (*Sawicki v. Ottawa Hills* [1988], 37 Ohio St.3d 222, 525 N.E.2d 468, followed.)"

Appellant cites the Ohio Supreme Court's holding in *Adkins v. Ontario* (1983), 8 Ohio St.3d 45, 8 OBR 406, 457 N.E.2d 317, as controlling. We disagree. The issue in *Adkins* was whether the guardrail, which was installed without a buried end on the divider island facing traffic ascending the grade, constituted a nuisance. The guardrail was on a median strip which was part of the roadway. In the case *sub judice*, there is nothing in the record indicating that there was obstruction on the city roadway. Appellant's argument that the illegally parked car could have contributed to the nuisance was insufficient and too speculative to show that any nuisance existed, especially since Mr. Kobasic testified that he saw the parked car and slowed down:

"Q. As you approached the Novak house, did you slow down a bit?

"A. Yes, I did.

"Q. And why did you slow down?

"A. There was a car on the side of the road that had its hazard lights on.

"Q. There was a car with flashing hazard lights on the side of the road?

"A. Yes.

"Q. And you saw those and that caused you to slow down?

"A. Yes.

"Q. Do you know where that car was parked?

"A. Right in front of the Novak house, right in front of the driveway, not blocking it, but right in front of the candy cane.

"Q. Was the car entirely off the road?

"A. Yes, it was close, but it was entirely off the road.

"Q. And those hazard lights would have blinked something like the hazard lights—the warning lights that Mr. Heffernan was talking about?

"A. Yes.

"Q. So in response to those hazard lights, you slowed down?

"A. Yes.

"Q. Where was your attention focused after that, where were you looking?

"A. I was looking forward after that."

Since Kobasic's view was not obstructed by the illegally parked car, we, therefore, cannot see how the same illegally parked car constituted a nuisance which resulted in the death of the Bonaiutos. See *Williamson, supra,* 45 Ohio St.3d at 183, 543 N.E.2d at 1246.

Appellant argues that the trial court erred when there was an issue as to the city's actual or constructive knowledge of the nuisance and the reasonable measures taken to abate the nuisance. In light of our holding, *supra,* that appellant failed to show that any nuisance existed, the issue of actual or constructive notice or the city's inability to abate a nuisance is irrelevant. Appellant, in its final argument, contends that the city's stationing of saw horses with yellow blinkers at the side of the road near the light display should be interpreted to mean that the city had knowledge of the existence of a nuisance. Appellant further argues that a police officer or a crossing guard should have been stationed to assist pedestrians crossing the road. Appellant continues, "a mere warning sign posted on each side of the road [at] an adequate distance from the display may have proved to be all that was necessary * * *."

Webster's Third New International Dictionary (1986) 1548, defines "nuisance" as "something that is disagreeable or troublesome: ANNOYANCE." While we are sympathetic with appellant's plight, we cannot as a matter of law hold that the "saw horses with yellow blinkers" in and of themselves create a presumption that the city acknowledges that the Christmas display was a nuisance. Appellant must show that the display was a nuisance, and the record is devoid of such showing. The city's stationing of saw horses with yellow blinkers serves as a notice to drivers to slow down. We cannot say that it is out of character for a city to want drivers to slow down when approaching a display, even when the display does not constitute a nuisance. Appellant argues that "Kobasic himself testified that, even though he had driven the route numerous times before on his way to and from work, he never noticed the saw horses and yellow lights." We cannot quite understand how Kobasic's failure to see the yellow blinking lights helps appellant's case. Quite to the contrary, Kobasic's failure to notice the yellow blinking lights while driving at night only goes to show his poor driving habits and does not make the city negligent for placing the blinking lights.

Appellant's argument that the city should have stationed police guards to supervise and direct traffic, or posted warning signs and delineated a crosswalk, are good arguments for political town meetings where politicians are chastised for not being responsive to citizen demands. However, when the issue is negligence as a matter of law, the statute makes such decisions or lack thereof discretionary and forbids the courts from second-guessing such political decisions. See *Williamson, supra;* see, also, *Sawicki, supra.* Accordingly, we decline to hold Broadview Heights negligent for its failure to install stop signs and place guards to direct traffic, especially where there was no evidence indicating that traffic in the area was being hampered by the display. Appellant's assignment of error is overruled. The trial court's judgment is affirmed.

*Judgment affirmed.*

DYKE, P.J., and JOHN F. CORRIGAN, J., concur.