OPINION
{¶ 1} Plaintiffs-appellants Jean Lash, et al. appeal from the April 22, 2005, Judgment Entry of the Richland County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee City of Mansfield.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In the City of Mansfield, Caldwell Street curves into and becomes Delph Street.[1] On November 5, 2001, at approximately 11:49 p.m., appellant Jean Lash (hereinafter "appellant") failed to negotiate the curve and drove her car off of the paved portion of the roadway and struck a tree. After exiting her vehicle, appellant fell into an open manhole, injuring her ankle.
 {¶ 3} Thereafter, on November 3, 2003, appellant and her husband filed a complaint against appellee City of Mansfield, among others. Appellants, in their complaint, alleged that appellee "negligently failed to install proper warning signs, negligently maintained and/or negligently illuminated Caldwell Street at the point it curves merging into Delph Street", and "negligently failed to maintained (sic) the easement and/or manhole cover adjacent to Caldwell Street at a point it curves into Delph Street." Appellant's husband set forth a derivative claim for loss of consortium.
 {¶ 4} Appellee City of Mansfield filed a Motion for Summary Judgment, arguing that it was entitled to immunity under Ohio Revised Code Chapter 2744 and that it had no knowledge of the defects alleged in appellants' complaint concerning the manhole cover, the condition of roadway, or concerning signage or lack of signage. As memorialized in a Judgment Entry filed on April 22, 2005, the trial court granted appellee's Motion for Summary Judgment.
 {¶ 5} Appellants now raise the following assignment of error on appeal:
 {¶ 6} "UPON DUE CONSIDERATION OF THE EVIDENCE PRESENTED AND CONSTRUED MOST FAVORABLY FOR PLAINTIFF-APPELLANT, THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT THE CITY OF MANSFIELD IS ENTITLED TO JUDGMENT PREDICATED UPON STATUTORY IMMUNITY."
 {¶ 7} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides the following, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 8} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. Further, trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 9} It is pursuant to this standard that we review appellants' assignment of error.
 I {¶ 10} Appellants, in their sole assignment of error, argue that the trial court erred in granting the Motion for Summary Judgment filed by appellee City of Mansfield. We disagree.
 {¶ 11} At issue in the case sub judice is whether appellee City of Mansfield is entitled to immunity under R.C. Chapter 2744. R.C. 2744.02(A)(1) states, in part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The parties do not dispute that appellee City of Mansfield is a political subdivision.
 {¶ 12} However, the immunity afforded a political subdivision such as appellee City of Mansfield in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in R.C. 2744.02(B). Hill v.Urbana, 79 Ohio St.3d 130, 679 N.E.2d 1109, 1997-Ohio-400. R.C.2744.02(B) states, in relevant part, as follows: "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:. . . .[2]
 {¶ 13} "(3) Except as otherwise provided in section 3746.24
of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge. . . .
 {¶ 14} "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."[3]
 {¶ 15} Finally, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Cater v. Cleveland,83 Ohio St.3d 24, 28, 697 N.E.2d 610, 1998-Ohio-421.
 {¶ 16} Appellants, in their complaint, specifically contended that appellee City of Mansfield was liable under R.C.2744.02(B)(3), cited above, based upon its failure to maintain the easement and/or sewer system manhole cover adjacent to Caldwell Street in repair and free from nuisance.
 {¶ 17} To determine whether a political subdivision has a duty under R.C. 2744.02(B)(3) to keep its roadways free from nuisance, the focus is on "whether a condition exists within the township's [or governmental entity's] control that creates a danger for ordinary traffic on the regularly traveled portion ofthe road." Franks v. Lopez (1994), 69 Ohio St.3d 345, 348,632 N.E.2d 502. (Emphasis added). In the case sub judice, the manhole cover and/or easement was not on the regularly traveled portion of the roadway. Rather, the manhole cover and/or easement was located in a grassy area ten feet off of the roadway. Appellee City of Mansfield, therefore, had no duty under R.C.2744.02(B)(3) with respect to the manhole cover and/or easement. See Neudecker v. Butler Cty. Engineer's Office,146 Ohio App.3d 614, 767 N.E.2d 776, 2001-Ohio-8663 and Murray v. Chillicothe,164 Ohio App.3d 294, 2005-Ohio-5864.
 {¶ 18} Appellants also argue that the trial court erred in holding that appellee City of Mansfield was immune under R.C.2744.02(B)(3) for failing to install proper warning signs. However, in Franks, supra, the Ohio Supreme Court held that while a political subdivision's "failure to maintain the signage already in place may constitute an actionable nuisance claim," design and construction defects and the failure to erect signage do not constitute a nuisance within the meaning of R.C.2744.02(B)(3). Id. at 348-349. Based on the foregoing, we find that appellee City of Mansfield is immune from liability under R.C. 2744.02(B)(3) for its alleged failure to install adequate warning signs.
 {¶ 19} As is stated above, appellants further maintain that appellee City of Mansfield is liable under R.C. 2744.02(B)(5) "based on its failure to comply with the directives of the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") relative to the placement . . . of signs. . . ." The court, in Fowler v.Williams County Commissioners (1996), 113 Ohio App.3d 760,682 N.E.2d 20, cited Franks, supra, in holding that "despite the fact that R.C. 4511.11(A) imposes a duty on political subdivisions to follow the OMUTCD, the decision to install the traffic control devices is discretionary . . . Therefore, in a case where the political subdivision decided not to post any signs, it is immune from liability for failure to follow the OMUTCD." Id. at 769, citing Franks, supra. at 349. Thus, the trial court correctly held that appellee City of Mansfield was not liable under R.C. 2744.02(B((5) for failing to comply with OMUTCD.
 {¶ 20} The next issue for determination is whether, as appellants alleged, the trial court erred in determining that appellee City of Mansfield was immune from liability for failing to maintain as opposed to install, warning signs at the intersection of Caldwell and Delph Streets. Once a decision to install certain traffic control signs is made, the implementation of that decision is not discretionary and not immune from liability. See Lopez, supra.
 {¶ 21} In the case sub judice, appellants note that photographs that are part of the trial court record "plainly show evidence of [signs] having been knocked down and in a total state of disrepair." However, appellants, in their brief, admit that they are unable to say what types of signs were knocked down and allegedly in a state of disrepair. Without such evidence, we cannot say that appellee City of Mansfield was negligent in failing to maintain warning signs. We find, therefore, that the trial court did not err in granting summary judgment to appellee City of Mansfield on such issue.
 {¶ 22} The final issue for determination is whether the trial court erred in holding that appellee City of Mansfield was immune with respect to appellants' claim that appellee City of Mansfield negligently maintained and/or illuminated Caldwell Street. InGraves v. City of East Cleveland (Jan. 30, 1997), Cuyahoga App. No. 70675, 1997 WL 35570, the appellants argued, in part, that the City of East Cleveland's failure to maintain street lighting was a nuisance actionable under R.C. 2744.02(B)(3) and that, therefore, the City of East Cleveland was not immune under R.C. Chapter 2744.
 {¶ 23} The court, in Graves, stated, in relevant part, as follows in holding that the failure to maintain street lighting was not a nuisance under R.C. 2744.02(B)(3): "Whether a political subdivision is liable under . . . R.C. 2744.02(B)(3) depends on if a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly traveled portion of the road. Manufacturer's Natl. Bank ofDetroit v. Erie Cty. Road Comm. (1992), 63 Ohio St.3d 318, 322. The municipality has a duty to keep the areas within its control free from nuisance which is a condition directly jeopardizing the safety of traffic on the road. Id.
 {¶ 24} "Conditions which constitute a nuisance under these provisions are those which affect the safety of ordinary traffic upon the roadway. A malfunctioning traffic light can be a nuisance. Frankhauser v. Mansfield (1969), 19 Ohio St.2d 102. Overhanging branches and foliage which obscure traffic signs, signs which have lost their capacity to reflect, or physical impediments such as potholes may all constitute actionable nuisance claims. Franks v. Lopez (1994), 69 Ohio St.3d 345. The failure to maintain existing signage or traffic signals may also be a nuisance. See Jones v. Shelly Co. (1995),106 Ohio App.3d 440.
 {¶ 25} "The common ground found within these cases is that municipal liability is limited to those conditions which render a street or sidewalk unsafe for usual and ordinary modes of travel.Palko v. Elyria (1993), 86 Ohio App.3d 211. Whether a municipality decides to provide street lighting and where the street lights are placed is discretionary with the municipality. Unlike traffic signals or signage, the provision of street lighting does not directly affect the flow of ordinary traffic on a roadway. Roadways still are safe for travel without lighting or with less lighting than may be required to illuminate the entire area.
 {¶ 26} "The maintenance of existing traffic control devices and signage is necessary for the safe use of a roadway as the flow of traffic and traveling on the street itself are directly affected. The use of street lights does not have the same impact on the ordinary use of the roadway as traffic lights and signage." Id. at 3.[4]
 {¶ 27} Furthermore, in DeFini v. Broadview Heights (1991),76 Ohio App.3d 209, 217, 601 N.E.2d 199, the court held that the City of Broadview's failure to install a street light on a roadway did not constitute a nuisance. In so holding, the court, in DeFini, stated, in relevant part, as follows: "It is settled law in Ohio that:
 {¶ 28} "Where the installation of traffic control devices by a municipality is discretionary pursuant to the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices." Winwood v. Dayton
(1988), 37 Ohio St.3d 282, 525 N.E.2d 808, syllabus.
 {¶ 29} "This court cannot mandate by legal decision what the legislature considers a free exercise of a municipality's discretionary authority and allow citizens to use the courts to force elected officials to act in areas where citizens can use their powers as voters to effect a change. Installation of lights on city streets is better suited by direct pressure on elected officials by citizens than by using the courts to second guess where and when street lights should be installed by the city. Broadview Heights' failure to install a street light on its roadway is neither the proximate cause of the death of the Bonaiutos nor is it actionable as a nuisance. This court cannot interfere with the city's exercise of its executive or planning function which involves the making of basic policy decisions unless such decisions constitute a danger to its citizens." Id at 216-217.
 {¶ 30} Based on the foregoing, we find that the trial court did not err in holding that appellee City of Mansfield was immune with respect to appellants' claims that appellee negligently maintained and/or illuminated Caldwell Street.
 {¶ 31} For the foregoing reasons, we find that the trial court did not err in holding that appellee City of Mansfield was immune from liability under R.C. Chapter 2744.
 {¶ 32} Appellants' sole assignment of error is, therefore, overruled.
 {¶ 33} The judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J. Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] While appellants refer to Delph as a street, appellee refers to the same as an avenue.
[2] Appellants, in their brief, contend that R.C.2744.02(B)(1), (B)(2) and (B)(4) are not applicable.
[3] Revised Code 2744.02 was amended effective April 9, 2003. The version of the statute cited is the previous version.
[4] In Graves, the court cited to its decision in Ugri v.City of Cleveland (Sept. 1, 1994), Cuyahoga App. No. 65737, 1994 WL 476377. In Ugri the court held that the provision of street lighting was a "governmental function."