GARLAND [ADMINISTRATRIX OF THE ESTATE OF GARLAND, DECEASED], APPELLEE, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT.

[Cite as Garland *v.* Ohio Dept. of Transp. (1990), 48 Ohio St. 3d 10.]

(No. 88-1556 — Submitted October 24, 1989 — Decided January 3, 1990.)

*Lee I. Turner* and *Laurence J. Powers,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *David C. Calderhead, Donald J. Guittar* and *Simon B. Karas,* for appellant.

WRIGHT, J. This case raises the question of whether the state is entitled to a reasonable time frame in which to implement a purely discretionary decision regarding traffic control. The court of appeals held that ODOT's June 9, 1981 decision to install a six-phase traffic signal with protection for left turns was not a discretionary and planning function, and that ODOT's immunity from tort liability therefore ceased with the initial determination in 1979 that a traffic signal should be installed at the intersection to replace the red and yellow flashing lights. This determination is erroneous. It would make little sense to immunize a purely discretionary decision but then deny the state a reasonable time frame in which to implement it.

The state of Ohio waived immunity from tort liability when R.C. Chapter 2743 became effective in 1975. This waiver was never absolute, however, and as we held in *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776: "* * * the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. * * *" *Id.* at paragraph one of the syllabus. The court of appeals agreed with Garland that following ODOT's 1979 acknowledgment that the intersection needed some kind of traffic signal, all decisions regarding what kind of signal to install and when to install it were not immune because ODOT was merely implementing its initial determination.

We reject the notion that ODOT's immunity terminated in 1979 when it decided to replace the red and yellow flashing lights with some other kind of signal. We hold instead that the decision-making process continued through the June 9, 1981 selection of a six-phase signal. The decision to install this type of signal instead of the two-phase signal that ODOT had con-

sidered earlier required ODOT to engage in a planning function involving a high degree of official discretion, thus meeting the standard set forth in *Reynolds, supra.* We held in *Winwood v. Dayton* (1988), 37 Ohio St. 3d 282, 525 N.E. 2d 808, that a municipality's decision *whether* to install a traffic control signal deserves the protection of sovereign immunity because such a decision requires the exercise of independent judgment and consideration of a number of factors. *Id.* at 284, 525 N.E. 2d at 810. The same is true of an ODOT decision as to *what type* of traffic control device to install at a particular intersection, a decision that requires the same kind of expert evaluation. See Ohio Manual of Uniform Traffic Control Devices for Streets and Highways (13 Rev. 1987), Section 6C-11. We hold that a governmental entity is immune from tort liability when it makes a decision as to what type of traffic signal to install at an intersection.

ODOT's immunity did not terminate with the June 1981 selection of a six-phase signal. ODOT correctly asserts that deciding *when* to install a traffic light also requires the exercise of discretion. Speaking for the Court of Claims, the late Justice Leonard Stern agreed, citing a Florida case, *Payne* v. *Broward Cty.* (Fla. 1984), 461 So. 2d 63. In *Payne,* a vehicle struck and killed a pedestrian in an intersection where the authorities had planned but not yet installed a pedestrian control device. The Florida Supreme Court stated that "[t]he time delay between the decision to install the traffic light and the actual installation does not remove the cloak of immunity." *Id.* at 66. Justice Stern made the factual finding that the delay in implementing the June 9, 1981 decision to install a six-phase signal was not negligent because ODOT was still performing a discretionary function.

We recognize that setting a timetable for implementation of a discretionary decision itself involves the exercise of judgment. We must add, however, that an agency may not delay implementation indefinitely. We hold that once an agency has made a discretionary decision, it has a reasonable amount of time to implement that decision without incurring tort liability.

In this case the time lag between the June 9, 1981 discretionary decision to install the six-phase signal and completion of installation on August 3, 1982 was approximately fourteen months. During this period, ODOT made a number of discretionary decisions. First, it decided to fund the project out of federal moneys that did not become available until October 1981. Then bids were solicited and evaluated, and a contractor was chosen in November 1981. Installation was delayed pending delivery of custom-ordered items; work began on the installation in June 1982 and was completed two months later.

On these facts, we concur with the Court of Claims that the fourteen-month time frame for implementation of the decision to install the six-phase signal was not unreasonable. Thus, ODOT is not liable for damages arising from the collision that fatally injured plaintiff's decedent on June 18, 1982.

For the reasons aforesaid, the judgment of the court of appeals is reversed and the judgment of the Court of Claims is reinstated.

*Judgment reversed.*

MOYER, C.J., HOLMES, DOUGLAS and H. BROWN, JJ., concur.

SWEENEY and RESNICK, JJ., dissent.

ALICE ROBIE RESNICK, J., dis-

senting. Although I do agree with the general statements of law contained in the majority's opinion, I disagree with its holding that ODOT acted within a reasonable amount of time in installing the traffic signal device.

It is well-established that the state has a duty to maintain its highways in a reasonably safe condition. See R.C. 5501.11; *Knickel* v. *Dept. of Transp.* (1976), 49 Ohio App. 2d 335, 3 O.O. 3d 413, 361 N.E. 2d 486. When ODOT has knowledge that an intersection is not in a reasonably safe condition, it should not be shielded from liability when it fails to implement its own decision to install a traffic control device within a reasonable amount of time.

The majority correctly states that a decision involving a high degree of official discretion is protected from liability by the doctrine of sovereign immunity. See *Winwood* v. *Dayton* (1988), 37 Ohio St. 3d 282, 284, 525 N.E. 2d 808, 810. See, also, *C & D Partnership* v. *Gahanna* (1984), 15 Ohio St. 3d 359, 15 OBR 480, 474 N.E. 2d 303; *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228, at paragraph two of the syllabus. Thus, immunity is preserved for those acts or omissions constituting an executive or planning function, involving the making of a basic policy decision, and requiring a high degree of official judgment or discretion. *Id.*

In the case before us, it is undisputed that the decision concerning whether to install a traffic control device involved a high degree of official discretion. Such a decision concerns basic policy considerations. *Winwood, supra,* at 284, 525 N.E. 2d at 810. I disagree, however, with the majority's determination that the time ODOT took to install the traffic control device was reasonable.

The facts of this case indicate that in 1971, ODOT had studied the intersection at issue and found it to be a high-accident location. ODOT installed yellow and red flashing lights in October 1974. Again in 1978, ODOT identified the intersection as a high-accident location. ODOT recognized that the intersection was not in a reasonably safe condition in May 1979 and determined that a traffic signal was necessary. ODOT admitted that implementation of the May 1979 study was a "priority matter." Accordingly, on May 17, 1979, ODOT decided to install a fully actuated two-phase traffic signal at the intersection. The traffic signal was installed August 3, 1982.

Thus, over thirty-eight months elapsed between the time that ODOT determined that a signal was necessary and the time that the project was completed. During this thirty-eight-month period, there were twenty-five accidents including six fatalities and severe injuries to six other persons. Also, within that thirty-eight-month time span, there were long periods of time during which ODOT failed to take the steps necessary to implement its decision to install a traffic control device. ODOT's own summary of activity between the May 1979 report and final installation of the traffic signal in August 1982 shows that some of the delay was due to departmental review and revisions. Some of the delay, however, was due to such factors as change in personnel and the "press of other work, primarily pavement marking plans," which alone resulted in a six-month delay.

ODOT breached its duty to maintain the intersection in a reasonably safe condition by its unreasonable delay in acting to remedy a known dangerous highway intersection when the decision to do so had already been made. This intersection had a large

amount of commercial traffic, partly because of its proximity to the Ohio Turnpike and to truckstops at each corner of the intersection. The record reveals that the period of consideration in this case was marked by only scattered spurts of study and evaluation and long gaps of inactivity which were inconsistent with the intersection's designation as a high-accident location. For these reasons, I would affirm the holding of the Court of Appeals for Franklin County.

SWEENEY, J., concurs in the foregoing dissenting opinion.