DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Victoria L. Sobczak, appeals from a decision by the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, the city of Sylvania ("the city"). For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant was injured in a single-car accident on August 19, 2002, after she lost control of her car while negotiating a curve on the southbound entrance ramp from *Page 2 
Monroe Street to US-23, in Sylvania, Ohio. On August 18, 2004, she filed a complaint against the city, alleging that the city had proximately caused her injuries by failing to keep the roadway free from nuisance — in particular, by failing to construct and maintain adequate guardrails or barriers and by failing to adequately design, construct, and maintain the surface and contour of the entrance ramp, in violation of R.C. 723.01 and 2744.02(B)(3).
 {¶ 3} On October 7, 2005, the city filed a motion for summary judgment, arguing that: 1) there is no basis in law for attaching liability to the city, because the state of Ohio, through ODOT, was responsible for and had control over the design, construction, and maintenance of the entrance ramp; and 2) even assuming that the city did have a role in the design or control of the entrance ramp, it was nevertheless immune from liability under the sovereign immunity provisions set forth at R.C. Chapter 2744. Appellant argued in opposition to the city's motion: 1) that there were genuine issues of material fact as to whether the city, rather than ODOT, had control over the ramp; and 2) that the R.C. 2744.02(B)(3) exception to the general rule of sovereign immunity applies to the city in this case.
 {¶ 4} On March 14, 2006, the trial court granted the city's motion for summary judgment, finding: 1) that the city was shielded from liability pursuant to the general grant of sovereign immunity set forth at R.C. Chapter 2744; and 2) that the R.C. 2744.02(B)(3) exception to such immunity did not apply. *Page 3 
 {¶ 5} Appellant timely appealed the trial court's March 14, 2006 judgment, raising the following as its sole assignment of error:
 {¶ 6} I. "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CITY OF SYLVANIA."
 {¶ 7} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 8} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 9} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party.Ryberg v. All state Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 10} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the *Page 4 
absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 11} As indicated above, in the instant case, appellant's theory of liability against the city is essentially that the city violated R.C.723.01 and 2744.02(B)(3) by failing to keep the entrance ramp "free from nuisance."
 {¶ 12} R.C. 723.01 grants municipal corporations the power to regulate the use of their streets. Together with this power, R.C. 723.01 imposes upon municipal corporations corresponding responsibilities for "the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation." R.C. 723.01. In addition, the version of this statute that is applicable to the instant case specifically provides that municipal corporations are to keep the aforementioned areas "open and free from nuisance."[1] R.C. 723.01." Thus, on the basis of R.C. 723.01, we may assume — at least for purposes of *Page 5 
this analysis — that the city had a statutory duty to insure that its public roads were in repair and free from nuisances.[2]
 {¶ 13} The next part of our analysis requires us to consider whether, in this case, the city is immune from liability under R.C. Chapter 2744. To determine whether a political subdivision, such as the city, enjoys immunity under R.C. Chapter 2744, courts employ a three-tiered analysis:
 {¶ 14} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. * * *
 {¶ 15} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
 {¶ 16} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense to that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability."Colbert v. City of Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 7-9. *Page 6 
 {¶ 17} In the instant case, it is clear that the care, supervision, and control of the public highways, and the duty to keep those areas open and free from nuisance, are governmental functions.[3] Thus, the city is entitled to immunity under the first tier of the analysis. See 2744.02(A)(1).
 {¶ 18} The second tier of the analysis requires us to determine whether any of the exceptions under R.C. 2744.02(B) apply. Here, the only exception to immunity that is even arguably applicable is the one set forth at R.C. 2744.02(B)(3). The relevant version of R.C.2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads * * * in repair, and free from nuisance."[4] *Page 7 
 {¶ 19} To determine whether a condition of a road should be deemed a nuisance for purposes of R.C. 2744.02(B)(3), we look to the two-pronged test articulated by the Supreme Court of Ohio in Haynes v.Franklin, 95 Ohio St.3d 344, 2002-Ohio-2334: First, the condition alleged to constitute a nuisance must create a danger for ordinary traffic on the regularly traveled portion of the road; and second, thecause of the condition must be other than a decision regarding design and construction. Id. at ¶ 18. Regarding the second prong, in particular, "[i]f the dangerous condition is the result of negligent design or construction decisions, the condition does not constitute a nuisance, and immunity attaches." Id. at ¶ 18 (emphasis in original).
 {¶ 20} In the current case, the alleged dangerous conditions consisted of the curvature of the entrance ramp, the surface of the pavement, and the absence of a guardrail. All of these conditions are the result of decisions regarding design and construction. As such, none of them qualifies as a nuisance under R.C. 2744.02(B)(3). Haynes, supra. On this basis alone, it would appear that summary judgment was properly granted in favor of the city.
 {¶ 21} In an attempt to avoid this result, appellant argues that, given the particular circumstances of this case, it is error to conclude that the city could not be liable for nuisance simply because the condition of the road resulted from a design decision. According to appellant, "under certain conditions, which are present in the case at bar, a defectively designed road can constitute a nuisance for which the city would be liable." Specifically, appellant contends that the city exposed itself to liability when, after *Page 8 
recognizing that the subject ramp was a hazard and needed to be reconfigured, it took the "wrong actions" to effect the necessary changes, thereby causing unreasonable delay in getting the problem addressed. The so-called "wrong actions" that appellant refers to consist of the city's repeated writing of letters to ODOT over a period of years (beginning sometime in the 1980's and continuing well into the 1990's) in a continuing effort to have ODOT fix the ramp.
 {¶ 22} In support of her argument that the city's decision to write letters to ODOT (somehow) rendered the allegedly defectively designed road a potential nuisance for which the city could be liable, appellant relies on Garland v. Ohio Dept. of Transp. (1990), 48 Ohio St.3d 10, and several of its progeny. We note at the outset that Garland, unlike the instant case, involves an exception to the state's general consent to be sued under R.C. 2743.02. It does not involve any exception to political subdivision immunity under R.C. Chapter 2744.02(B). For this reason,Garland appears on its face to be unlikely to apply to the matter at hand.
 {¶ 23} Nevertheless, we will proceed with an examination of theGarland holding to determine whether it has any application herein.Garland stands for the proposition that once a governmental entity has made a discretionary decision, it has a reasonable amount of time to implement that decision before it will become subject to tort liability. Id., at paragraph two of the syllabus. As emphasized by the court in that case, "[A]n agency may not delay implementation indefinitely." Id. at 12. *Page 9 
 {¶ 24} Appellant argues that evidence of the city's discretionary decision to write letters to ODOT in an attempt to obtain relief for problems with the ramp raises a genuine issue of material fact as to whether the city failed to take timely, appropriate action to remove a known hazard.
 {¶ 25} Even assuming, arguendo, that the asserted misconduct could be actionable pursuant to Garland (and, certainly, we make no finding that it is), it still does not establish a nuisance within the meaning of R.C. 2744.02(B)(3). Nor does it fall within any of the other R.C.2744.02(B) exceptions to immunity. As such, it fails to satisfy the second-tier requirement for attachment of political subdivision liability in this case.
 {¶ 26} As recognized by the trial court, because appellant has failed to establish that an exception to sovereign immunity applies, there is no cause for further determination as to whether any of the R.C. 2744.03
defenses would apply to provide the city a defense against liability. Appellant's sole assignment of error is found not well-taken.
 {¶ 27} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., and William J. Skow, J., concur.
[1] The version of R.C. 723.01 that was in effect on the date of the accident was subsequently amended effective April 9, 2003. The uncodified law accompanying R.C. 723.01 states that the later amendments "apply only to causes of action that accrue on or after the effective date of this act", and that "[a]ny cause of action that accrues prior to the effective date of this act is governed by the law in effect when the cause of action accrued." Thus, in the instant case, it is the earlier version that applies.
[2] We note that the question of whether the City, or ODOT, bears ultimate responsibility in this case remains a matter of vigorous dispute. Appellant has initiated an action similar to the one at hand against ODOT in the Ohio Court of Claims, in case number 2004-08324. On January 4, 2005, the Court of Claims granted a stay in that matter pending the final disposition of the instant action.
[3] Under R.C. 2744.01, a "governmental function" means a function of a political subdivision: 1) "that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement"; 2) "that is for the common good of all citizens of the state"; or 3) "that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of [R.C. 2744.01] as a proprietary function. R.C. 2744.01(C)(1). The definition of "governmental function" specifically includes "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds," and "[t]he regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices". R.C. 2744.01(C)(2)(e),(j).
[4] R.C. 2744.02(B)(3) was amended by Am. Sub. S.B. No. 106, 149 Ohio Laws, Part II, 3500, 3508 (S.B. No. 106), which became effective on April 9, 2003. Because this accident occurred on August 19, 2002, the former version of the statute applies in this case. See Shepherd v. Cityof Cincinnati, 168 Ohio App.3d 444, 2006-Ohio-4286, ¶ 18. *Page 1