[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Risner v. Ohio Dept. of Transp.,* Slip Opinion No. 2015-Ohio-4443.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4443

RISNER, ADMR., ET AL., APPELLEES, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Risner v. Ohio Dept. of Transp.*, Slip Opinion No. 2015-Ohio-4443.]

*Ohio Department of Transportation is immune from liability for damages arising from its decisions regarding which portions of a highway it will improve and what type of improvement it will make—Ohio Department of Transportation's decision to improve a specific portion of highway does not trigger a duty to improve surrounding sections of the highway.*

(No. 2014-0862—Submitted March 25, 2015—Decided October 29, 2015.)

APPEAL from the Court of Appeals for Franklin County, No. 12AP-828, 2013-Ohio-5698.

_____

**SYLLABUS OF THE COURT**

1.  In determining whether to improve an existing highway, the Ohio Department of Transportation is immune from liability for damages arising from its decisions regarding which portions of a highway it will improve and what type of improvement it will make. (*Winwood v. Dayton*, 37 Ohio St.3d 282, 525 N.E.2d 808 (1988), and *Garland v. Ohio Dept. of Transp.*, 48 Ohio St.3d 10, 548 N.E.2d 233 (1990), followed.)

2.  The Ohio Department of Transportation's decision to improve a specific portion of highway does not trigger a duty to improve surrounding sections of the highway.

3.  When the Ohio Department of Transportation decides to improve an existing highway, it has a duty to execute that decision in accordance with current construction standards.

——————————

**LANZINGER, J.**

{¶ 1} In this case, we are asked to determine whether the Ohio Department of Transportation ("ODOT") may be subject to liability arising from its decisions on improving public-highways.[1] We hold that ODOT is immune from liability with respect to its decisions whether to improve an existing highway, which portions of the highway to improve, and what type of improvements it will make. In executing its decisions to improve a highway, however, ODOT has a duty to ensure that it acts in accordance with current construction standards, and it may be subject to liability when it fails to meet those standards.

———————————

[1] The parties use the terms "highway" and "roadway" interchangeably in their briefs. R.C. 5501.01(A) provides that " 'road' or 'highway' includes all appurtenances to the road or highway * * *." For ease of discussion, we use "highway" throughout this opinion to refer to both roads and highways.

I. Case Background

{¶ 2} In September 2009, Amber Risner was a passenger in a vehicle involved in a collision with a tractor-trailer at the intersection of State Route 220 and State Route 32. Amber was killed in the crash. Although the intersection did not contain any traffic signals when the highway was first constructed, in response to safety concerns regarding the intersection ODOT installed advance-warning signs and red and yellow flashing lights in the intersection in 2002 and 2005.

{¶ 3} Amber's parents, appellees Paul and Catherine Risner, filed a complaint as administrators of Amber's estate against ODOT alleging negligent design and maintenance of the intersection. They alleged that drivers could not properly see oncoming traffic when traveling through the intersection. They also claimed that ODOT was "negligent in installing and/or using a 'flashing' red and yellow light at the intersection * * * rather than a more appropriate traffic control device, such as a three-light 'red, yellow and green' traffic control light," and that ODOT was also "negligent in designing, installing and/or maintaining an intersection that was unsafe for the motoring public."

{¶ 4} In March 2012, ODOT filed a motion for summary judgment, arguing in part that it had constructed the intersection according to design standards in effect at the time, that it had no duty to improve or upgrade the intersection later, and that it is immune from liability for the decisions that it made regarding the traffic signals at the intersection. The Court of Claims granted ODOT's motion in part, concluding that ODOT was entitled to judgment as a matter of law on the claim that it was negligent in failing to install a three-light traffic signal at the intersection. The court found (1) that ODOT had decided to install red and yellow flashing lights some time after the intersection was constructed, (2) that ODOT's Manual of Uniform Traffic Control Devices did not require ODOT to install a three-light signal when it constructed the intersection,

and (3) that ODOT's later decision to install flashing lights rather than a three-light signal did not violate the manual. The court denied summary judgment on the Risners' claim of insufficient sight distance, finding that material issues of fact existed.

{¶ 5} ODOT filed a second motion for summary judgment on the remaining claim in August 2012. The court granted the motion, concluding that the design of the intersection conformed to the minimum sight-distance standards set forth in the version of ODOT's Location and Design Manual in effect when the intersection was constructed. The court rejected the Risners' argument that ODOT had a duty to upgrade the intersection to current design standards when it installed the flashing lights. The court reasoned that the installation of the lights constituted highway maintenance, rather than highway improvement. On this basis, the court held that ODOT did not have a duty to upgrade the intersection to current design standards pursuant to *Estate of Morgan v. Ohio Dept. of Transp.*, 10th Dist. Franklin Nos. 10AP-362 and 10AP-382, 2010-Ohio-5969.

{¶ 6} The Risners appealed, arguing that the Court of Claims erred when it held that ODOT was performing maintenance when it installed the flashing lights in the intersection. The Tenth District reversed, holding that the installation of the flashing lights constituted improvements rather than maintenance, triggering a duty on behalf of ODOT to upgrade the intersection to current design standards. The Tenth District also denied ODOT's application for reconsideration and en banc review.

{¶ 7} ODOT appealed to this court, and we accepted jurisdiction over its proposition of law: "When ODOT makes discrete highway improvements, only those particular improvements need to meet the current construction standards." 140 Ohio St.3d 1415, 2014-Ohio-3785, 15 N.E.3d 883.

## II. Analysis

**{¶ 8}** The Tenth District dedicates the majority of its analysis to whether ODOT's actions in installing the flashing lights in this case constitute either "maintenance" or "improvement" of the highway. This analysis is predicated upon the Tenth District's line of cases classifying ODOT actions as one or the other and determining ODOT's liability based on the classification. *See Hurier v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 01AP-1362, 2002-Ohio-4499; *Rahman v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 05AP-439, 2006-Ohio-3013; *Estate of Morgan*, 2010-Ohio-5969. In essence, these cases hold that ODOT's duty to *maintain* does not encompass a duty to redesign or reconstruct public highways or to upgrade them to current design standards, but when ODOT engages in *improving* the public highways, it does have a duty to upgrade them to current design standards. *Estate of Morgan* at ¶ 12.

**{¶ 9}** The Tenth District Court of Appeals characterized ODOT's changes to the intersection as being improvements rather than maintenance and based its decision on that determination. ODOT does not quarrel with the Tenth District's classification but instead asks us to hold that only those particular improvements that it decided to make must meet current construction standards. We accordingly will not engage in an analysis of whether ODOT's changes to the intersection constitute maintenance or improvements. We also decline to adopt the Tenth District's maintenance-or-improvement analysis and will instead focus our analysis on the specific issue presented to us in this appeal.

**{¶ 10}** First is the question of government immunity from suit.

*A. ODOT's decision to improve the intersection is protected by Ohio's discretionary-function doctrine*

**{¶ 11}** With the enactment of R.C. 2743.02, the state "waive[d] its immunity from liability * * * and consent[ed] to be sued, and have its liability determined, in the court of claims * * * in accordance with the same rules of law

applicable to suits between private parties." In interpreting that statutory language in a case involving the supervision of a furloughed prisoner by the Division of Parole and Community Services, we stated:

> [T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.

*Reynolds v. State*, 14 Ohio St.3d 68, 471 N.E.2d 776 (1984), paragraph one of the syllabus.

{¶ 12} In its brief, ODOT notes that the phrase "discretionary-function doctrine" is commonly used as shorthand for the notion that the state is protected from suit for making basic policy decisions characterized by the exercise of a high degree of official judgment or discretion. We agree that this phrase is useful and accordingly adopt the phrase "discretionary-function doctrine" as shorthand to mean that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision that is characterized by the exercise of a high degree of official judgment or discretion.[2]

---

[2] We note that the precise definition of the phrase "discretionary-function doctrine" may vary among jurisdictions. For example, the federal discretionary-function doctrine

> generally arises in the context of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), (the "FTCA"), where Congress provided that the waiver of sovereign

**{¶ 13}** We further elaborated on the principles underlying the discretionary-function doctrine in *Reynolds* when we explained the difference between the state's making a decision—for which there is no liability—and its performing the activities necessary to implement that decision—for which there may be liability:

> Under the above standard plaintiffs may not maintain an action against the state for its decision to furlough a prisoner. However, once such a decision has been made * * *, a cause of action can be maintained against the state for personal injuries proximately caused by the failure to confine the prisoner during non-working hours * * *.

*Reynolds* at 70.

**{¶ 14}** Four years after our decision in *Reynolds*, we applied the principles of the discretionary-function doctrine in a case involving a municipality's claim of immunity from liability for damages allegedly arising from its decision not to install particular traffic-control devices at an intersection within the city. *Winwood v. Dayton*, 37 Ohio St.3d 282, 525 N.E.2d 808 (1988). In *Winwood*, the plaintiff alleged that the city of Dayton was negligent in failing to provide adequate safeguards for pedestrians attempting to cross at an intersection and failing to properly maintain traffic-control devices at the intersection. *Id.* at 283. In concluding that Dayton was not liable for any damages resulting from its

---

immunity by the United States does not extend to "Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

*Mays v. Tennessee Valley Auth.*, 699 F.Supp.2d 991, 1006 (E.D.Tenn.2010).

decision, we held, "Where the installation of traffic control devices by a municipality is discretionary pursuant to the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices." *Id*. at syllabus. We further explained:

> [T]he case before us today concerns a municipal decision requiring the consideration of basic policy and the exercise of independent judgment. The factors involved in determining the necessity or advisability of installing traffic control devices include the regulation of traffic patterns and traffic flow at the specific location and in surrounding areas, fiscal priorities, safety, and various engineering considerations. Thus, the decision to install or to forgo traffic control devices at a particular intersection is a planning function, involving basic policy considerations and the exercise of a high degree of official discretion.

*Id.* at 384.

{¶ 15} We applied these principles from *Reynolds* and *Winwood* to ODOT's decisions regarding the improvement of public highways in *Garland v. Ohio Dept. of Transp.*, 48 Ohio St.3d 10, 548 N.E.2d 233 (1990). In *Garland*, the plaintiff claimed that ODOT was negligent in delaying the installation of a traffic signal. Applying our holding in *Winwood*, we held: "A governmental entity is immune from tort liability when it makes a decision as to what type of traffic control signal to install at an intersection." *Id.* at paragraph one of the syllabus. We further held that ODOT's decision of *when* to install the traffic signal also required the exercise of discretion and that ODOT accordingly had a reasonable

8

amount of time to implement its decision once it was made. *Id.* at 12 and paragraph two of the syllabus.

{¶ 16} Taken together, *Winwood* and *Garland* establish a concrete set of principles to apply in deciding whether an entity exercised discretion in its decision regarding improving highways. *Winwood* establishes that *whether* to improve a highway is a protected decision. Under *Winwood*, both the decision *to improve* a highway and the decision *not to improve* a highway are protected. *Garland* adds that the decision of *what type* of improvement to make is also a protected decision, as is the decision of *when to make* the improvement, as long as it is made within a reasonable time.

{¶ 17} Based on *Winwood* and *Garland*, it is clear that in this case, ODOT made three decisions protected by the discretionary-function doctrine: (1) its decision *to improve* a particular portion of the intersection, (2) its decision *not to improve* other portions of the intersection, and (3) its decision regarding *what type* of improvement—i.e., advance-warning signs and red and yellow flashing lights—to make to the intersection. Each of these decisions entailed the exercise of a planning function involving the making of a basic policy decision characterized by the exercise of a high degree of official judgment and discretion.

{¶ 18} ODOT's expertise in highway design and construction and its understanding of the vast network of highways throughout the state, together with the fact that it is statutorily authorized to improve the state's highways, make it the foremost authority on the subject of highway improvements. The current framework of Ohio law prevents the judicial branch from second-guessing ODOT's decisions in this regard. We accordingly hold that ODOT is immune from any liability for damages resulting from those decisions.

*B.   ODOT's decision to improve one portion of a highway does not trigger a duty to improve surrounding portions of the highway*

{¶ 19} ODOT's immunity precludes it from liability for damages arising from its decisions that are characterized by the exercise of a high degree of official judgment and discretion.  The Risners argue, however, that immunity does not protect ODOT's actions in this case.

{¶ 20} The Risners argue that once ODOT decides to improve a portion of a highway, it is not immune from liability for damages arising from its determination of how to implement its decision.  Amicus curiae, the Ohio Association for Justice, builds upon this argument by asserting that after choosing to improve a portion of a highway, ODOT has a duty to make the highway around that specific area of improvement safe under current safety standards.

{¶ 21} The Risners are correct that this court has not held that ODOT's determination of *how* an improvement is implemented is immune from liability. In *Anderson v. Ohio Dept. of Ins.*, 58 Ohio St.3d 215, 218, 569 N.E.2d 1042 (1991), *overruled in part on other grounds by Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, we held:

> [E]ven though a discretionary decision is immune from suit, the implementation of that decision can be carried out in a negligent manner.  When carrying out the mandates of a public employer, the actions of the agents or employees of that employer are distinguishable from the original decision to take action and thus could be actionable.

We applied *Anderson* in *Semadeni v. Ohio Dept. of Transp.*, 75 Ohio St.3d 128, 661 N.E.2d 1013 (1996).  In *Semadeni*, ODOT adopted Policy 1005.1, which provided for the construction of fencing on existing bridges, but its full

10

implementation of that policy was delayed. *Id.* at 129-130. In holding that ODOT was not immune from liability for damages arising from its failure to fully implement that policy, we explained, "[A]doption of Policy 1005.1 in 1985 was a 'basic policy decision,' and * * * ODOT failed to implement Policy 1005.1 within a reasonable amount of time. The Court of Claims erred in its legal conclusion that subsequent 'time and manner' decisions made to implement Policy 1005.1 were themselves entitled to immunity." *Id.* at 132.

**{¶ 22}** We declined in *Anderson* and *Semadeni* to hold that the state or a state agency is immune from liability for damages arising from its determination of how to implement its decision. This does not mean, however, that ODOT is liable in this case. As we explained, this case does not turn upon *how* ODOT chose to implement a decision. Instead, we are concerned with three separate decisions made by ODOT: its decision to improve one portion of the highway, its decision not to improve other portions of the highway, and its decision regarding the type of improvement to make.

**{¶ 23}** Although ODOT argues in its brief that it makes policy decisions when it determines how to remedy a particular stretch of highway, its argument in support of this assertion echoes *Garland*'s holding that a governmental entity is immune from tort liability when it decides *what type* of improvement to make. Because *Winwood* and *Garland* provide ample guidance for analyzing the issues present in this case, we decline today to expand our application of the discretionary-function doctrine to include immunity for ODOT's determination of *how* to implement its decision. Instead, we reaffirm our prior holdings establishing ODOT's immunity from liability for damages arising from its decisions whether to improve or not to improve certain portions of highway and what type of highway improvement to make.

**{¶ 24}** We emphasize that although ODOT has immunity for the decisions themselves, *Anderson* and *Semadeni* provide that it is not immune from liability

for damages resulting from negligence that occurs in implementing those decisions. Thus, while ODOT is immune from any liability arising from the decisions made pursuant to its discretionary function, immunity does not extend beyond that discretionary function to acts of implementation. ODOT has a duty to properly implement its discretionary decisions. It may be subject to liability if it fails to abide by current construction standards or otherwise acts negligently in executing a decision to improve an existing highway. For instance, if ODOT negligently constructs a particular highway improvement or causes damage either to that portion or surrounding portions of the highway, it may be subject to liability for failing to execute its decision in a proper manner.

{¶ 25} In this case, the Risners argue that ODOT made policy decisions to improve the intersection and that "[t]he manner that ODOT chose to implement these policies * * * did nothing to improve sight distance or ensure the intersection complied with its written sight distance standards." This argument does not assert that ODOT *executed* its decision in a negligent manner. Instead, it attacks the very decision itself. Rather than argue that ODOT acted negligently in installing the advance-warning signs and red and yellow flashing lights in violation of its duty to execute its decision in accordance with current standards, the Risners argue that the decision to install these improvements failed to improve the safety of the intersection. Because this argument challenges ODOT's discretionary function rather than its duty to execute its decisions in a proper manner, it is not necessary to apply *Anderson* or *Semadeni* to this case.

{¶ 26} We also decline to adopt the Ohio Association for Justice's position that once ODOT decides to improve a specific part of a highway, it has a duty to improve the areas surrounding it. As *Winwood* shows, ODOT's decision to improve a portion of a highway is a basic policy decision characterized by the exercise of a high degree of official discretion. Just as this decision to improve a portion of highway is entitled to immunity, the decision not to improve

12

surrounding areas is also entitled to immunity. Applying the discretionary-function doctrine, we hold that ODOT is immune from liability for damages resulting from its decisions at issue in this case.

### III. Conclusion

{¶ 27} In determining whether to improve an existing highway, the Ohio Department of Transportation is immune from liability for damages arising from its decisions regarding which portions of a highway it will improve and what type of improvement it will make. The Ohio Department of Transportation's decision to improve a specific portion of highway does not trigger a duty to improve surrounding sections of the highway. When the Ohio Department of Transportation decides to improve an existing highway, it has a duty to execute that decision in accordance with current construction standards. We reverse the decision of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and O'DONNELL and KENNEDY, JJ., concur.

PFEIFER, FRENCH, and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 28} I agree with the majority's statement that the Ohio Department of Transportation ("ODOT") is "the foremost authority on the subject of highway improvements." Majority opinion at ¶ 18. This case raises an important question: In what instances do the citizens of Ohio get the benefit of that expertise? That is, when does ODOT have a duty to live up to its own standards? The majority opinion fails to answer that central issue in the case, the issue that formed the basis of the trial court and appellate court decisions. This case is not about whether ODOT is immune from the decisions that it makes concerning changes to

roadways, but instead is about the standards to which ODOT is held in implementing the decisions it makes. I would hold in this case that when ODOT undertakes the improvement of an intersection, it must conform that improvement to its own standards contained in its current Location and Design Manual. ODOT does not have the discretion to not follow its own standards when improving an intersection.

{¶ 29} The Tenth District Court of Appeals, as the court assigned to review appeals from the Court of Claims, has developed a test to determine what sort of activity undertaken by ODOT triggers a duty for ODOT to conform a project to ODOT's own modern standards. The majority accurately describes the Tenth District's test: "ODOT's duty to *maintain* does not encompass a duty to redesign or reconstruct public highways or to upgrade them to current design standards, but when ODOT engages in *improving* the public highways, it does have a duty to upgrade them to current design standards." (Emphasis sic.) Majority opinion at ¶ 8. Thus, for example, in *Estate of Morgan v. Ohio Dept. of Transp.*, 10th Dist. Franklin Nos. 10AP-362 and 10AP-382, 2010-Ohio-5969, the court held that ODOT had no ongoing duty to modernize the design of the roadway at issue beyond how it was originally designed in 1939. The court concluded that the addition of guardrails—required under current standards—that might have saved the driver's life and that of his infant child would have constituted an improvement rather than simply maintenance and that "[t]he duty to maintain does not include a duty to institute improvements." *Id*. at ¶ 6 and 14.

{¶ 30} The central issue in the court below was whether ODOT's addition of traffic-control devices constituted maintenance or improvement of the roadway. But the majority chooses not to directly address the Tenth District's longstanding test in this case. As the majority relates, ODOT does not quarrel with the Tenth District's holding that the project undertaken by ODOT in this case was an improvement. Majority opinion at ¶ 9. And the majority

acknowledges that when ODOT "decides to improve an existing highway, it has a duty to execute that decision in accordance with current construction standards." Majority opinion at paragraph three of the syllabus. But the majority sees this case as being about three separate ODOT decisions: "(1) its decision to improve a particular portion of the intersection, (2) its decision not to improve other portions of the intersection, and (3) its decision regarding what type of improvement—i.e., advance-warning signs and red and yellow flashing lights—to make to the intersection." (Emphasis deleted.) Majority opinion at ¶ 17.

{¶ 31} To the contrary, ODOT made only one decision here: it decided to improve the intersection. That decision lead to the core issue in this case: To what standard is ODOT held in implementing that decision? I disagree with the majority's determination that ODOT's decision to improve an intersection can consist of decisions to improve some aspects of the intersection and not to improve other aspects of the intersection, to meet safety standards in one regard but not in another.

{¶ 32} An intersection necessarily consists of more than one road. An "intersection" is defined as

> [t]he area embraced within the prolongation or connection of the lateral curb lines, or, if none, the lateral boundary lines of the roadways of two highways that join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways that join at any other angle might come into conflict.

R.C. 4511.01(KK)(1). ODOT undertook the project of improving the intersection, not improving one discrete part of one highway. The entire intersection was the object of ODOT's improvement in this case; ODOT added a flashing traffic signal that affected travel on both highways (a yellow flashing light for traffic moving east and west on State Route 32 and a red flashing light for traffic moving north and south on State Route 220). That improvement triggered ODOT's duty to conform the improvement of the intersection to the requirements of the Location and Design Manual applicable at the time the improvement was made, including the manual's requirements on intersection sight distance. To slightly amend the third syllabus paragraph of the majority decision, when ODOT decides to improve an existing intersection, it has a duty to execute that decision in accordance with current construction standards.

{¶ 33} It should not be assumed that a change in standards in intersection sight distance necessarily requires a major revamping, such as regrading, of one or both highways making up an intersection. Much more modest improvements are acceptable. The current ODOT manual states that "[i]f the intersection sight distance cannot be attained, additional safety measures should be provided. These may include, but are not limited to, advance warning signs and flashers and/or reduced speed limit zones in the vicinity of the intersection." https://www.dot.state.oh.us/Divisions/Engineering/Roadway/DesignStandards/roadway/Location%20and%20Design%20Manual/Entire_Manual_July_2015.pdf, Section 201.3, at 2-2 (accessed Oct. 20, 2015).

{¶ 34} Whether to upgrade an intersection is part of ODOT's discretionary function. But it is not within the discretion of ODOT to ignore its own standards once it does undertake a highway improvement. I would affirm the decision of the court of appeals.

FRENCH and O'NEILL, JJ., concur in the foregoing opinion.

_____

Douglas J. Blue, for appellees.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, William C. Becker, Principal Assistant Attorney General, and Amy S. Brown, Associate Assistant Attorney General, for appellant.

Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae, the Ohio Association for Justice.

_____