*56 Lanzinger, J.
{¶ 1} In this case, we are asked to determine whether the Ohio Department of Transportation (“ODOT”) may be subject to liability arising from its decisions on improving public highways.[1] We hold that ODOT is immune from liability with respect to its decisions whether to improve an existing highway, which portions of the highway to improve, and what type of improvements to make. In executing its decisions to improve a highway, however, ODOT has a duty to ensure that it acts in accordance with current construction standards, and it may be subject to liability when it fails to meet those standards.
I. Case Background
{¶ 2} In September 2009, Amber Risner was a passenger in a vehicle involved in a collision with a tractor-trailer at the intersection of State Route 220 and State Route 32. Amber was killed in the crash. Although the intersection did not contain any traffic signals when the highway was first constructed, in response to safety concerns regarding the intersection, ODOT installed advance-warning signs and red and yellow flashing lights at the intersection in 2002 and 2005.
{¶ 3} Amber’s parents, appellees Paul and Catherine Risner, filed a complaint as administrators of Amber’s estate against ODOT alleging negligent design and maintenance of the intersection. They alleged that drivers could not properly see oncoming traffic when traveling through the intersection. They also claimed that ODOT was “negligent in installing and/or using a ‘flashing’ red and yellow light at the intersection * * * rather than a more appropriate traffic control device, such as a three-light ‘red, yellow and green’ traffic control light,” and that ODOT was also “negligent in designing, installing and/or maintaining an intersection that was unsafe for the motoring public.”
{¶ 4} In March 2012, ODOT filed a motion for summary judgment, arguing in part that it had constructed the intersection according to design standards in effect at the time, that it had no duty to improve or upgrade the intersection *57 later, and that it is immune from liability for the decisions that it made regarding the traffic signals at the intersection. The Court of Claims granted ODOT’s motion in part, concluding that ODOT was entitled to judgment as a matter of law on the claim that it was negligent in failing to install a three-light traffic signal at the intersection. The court found (1) that ODOT had decided to install red and yellow flashing lights some time after the intersection was constructed, (2) that ODOT’s Manual of Uniform Traffic Control Devices did not require ODOT to install a three-light signal when it constructed the intersection, and (3) that ODOT’s later decision to install flashing lights rather than a three-light signal did not violate the manual. The court denied summary judgment on the Risners’ claim of insufficient sight distance, finding that material issues of fact existed.
{¶ 5} ODOT filed a second motion for summary judgment on the remaining claim in August 2012. The court granted the motion, concluding that the design of the intersection conformed to the minimum sight-distance standards set forth in the version of ODOT’s Location and Design Manual in effect when the intersection was constructed. The court rejected the Risners’ argument that ODOT had a duty to upgrade the intersection to current design standards when it installed the flashing lights. The court reasoned that the installation of the lights constituted highway maintenance rather than highway improvement. On this basis, the court held that ODOT did not have a duty to upgrade the intersection to current design standards pursuant to Estate of Morgan v. Ohio Dept. of Transp., 10th Dist. Franklin Nos. 10AP-362 and 10AP-382, 2010-Ohio-5969, 2010 WL 4968640.
{¶ 6} The Risners appealed, arguing that the Court of Claims erred when it held that ODOT was performing maintenance when it installed the flashing lights in the intersection. The Tenth District reversed, holding that the installation of the flashing lights constituted improvements rather than maintenance, triggering a duty on behalf of ODOT to upgrade the intersection to current design standards. The Tenth District also denied ODOT’s application for reconsideration and en banc review.
{¶ 7} ODOT appealed to this court, and we accepted jurisdiction over its proposition of law: “When ODOT makes discrete highway improvements, only those particular improvements need to meet the current construction standards.” 140 Ohio St.3d 1415, 2014-Ohio-3785, 15 N.E.3d 883.
II. Analysis
{¶ 8} The Tenth District dedicates the majority of its analysis to whether ODOT’s actions in installing the flashing lights in this case constitute either “maintenance” or “improvement” of the highway. This analysis is predicated upon the Tenth District’s line of cases classifying ODOT actions as one or the *58 other and determining ODOT’s liability based on the classification. See Hurier v. Ohio Dept. of Transp., 10th Dist. Franklin No. 01AP-1362, 2002-Ohio-4499, 2002 WL 2005755; Rahman v. Ohio Dept. of Transp., 10th Dist. Franklin No. 05AP-439, 2006-Ohio-3013, 2006 WL 1645021; Estate of Morgan, 2010-Ohio-5969, 2010 WL 4968640. In essence, these cases hold that ODOT’s duty to maintain does not encompass a duty to redesign or reconstruct public highways or to upgrade them to current design standards, but when ODOT engages in improving the public highways, it does have a duty to upgrade them to current design standards. Estate of Morgan at ¶ 12.
{¶ 9} The Tenth District Court of Appeals characterized ODOT’s changes to the intersection as being improvements rather than maintenance and based its decision on that determination. ODOT does not quarrel with the Tenth District’s classification but instead asks us to hold that only those particular improvements that it decided to make must meet current construction standards. We accordingly will not engage in an analysis of whether ODOT’s changes to the intersection constitute maintenance or improvements. We also decline to adopt the Tenth District’s maintenanee-or-improvement analysis and will instead focus our analysis on the specific issue presented to us in this appeal.
{¶ 10} First is the question of government immunity from suit.

A. ODOT’s decision to improve the intersection is protected by Ohio’s discretionary-function doctrine

{¶ 11} With the enactment of R.C. 2743.02, the state “waive[d] its immunity from liability * * * and consented] to be sued, and have its liability determined, in the court of claims * * * in accordance with the same rules of law applicable to suits between private parties.” In interpreting that statutory language in a case involving the supervision of a furloughed prisoner by the Division of Parole and Community Services, we stated:
[T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities.
Reynolds v. State, 14 Ohio St.3d 68, 471 N.E.2d 776 (1984), paragraph one of the syllabus.
*59 {¶ 12} In its brief, ODOT notes that the phrase “discretionary-function doctrine” is commonly used as shorthand for the notion that the state is protected from suit for making basic policy decisions characterized by the exercise of a high degree of official judgment or discretion. We agree that this phrase is useful and accordingly adopt the phrase “discretionary-function doctrine” as shorthand to mean that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision that is characterized by the exercise of a high degree of official judgment or discretion.[2]
{¶ 13} We further elaborated on the principles underlying the discretionary-function doctrine in Reynolds when we explained the difference between the state’s making a decision — for which there is no liability — and its performing the activities necessary to implement that decision — for which there may be liability:
Under the above standard plaintiffs may not maintain an action against the state for its decision to furlough a prisoner. However, once such a decision has been made * * *, a cause of action can be maintained against the state for personal injuries proximately caused by the failure to confine the prisoner during non-working hours * * *.
Reynolds at 70.
{¶ 14} Four years after our decision in Reynolds, we applied the principles of the discretionary-function doctrine in a case involving a municipality’s claim of immunity from liability for damages allegedly arising from its decision not to install particular traffic-control devices at an intersection within the city. Win-wood v. Dayton, 37 Ohio St.3d 282, 525 N.E.2d 808 (1988). In Winwood, the plaintiff alleged that the city of Dayton was negligent in failing to provide adequate safeguards for pedestrians attempting to cross at an intersection and failing to properly maintain traffic-control devices at the intersection. Id. at 283. In concluding that Dayton was not liable for any damages resulting from its *60 decision, we held, “Where the installation of traffic control devices by a municipality is discretionary pursuant to the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, the municipality is immune from tort liability for damages allegedly resulting from the absence of such devices.” Id. at syllabus. We further explained:
[T]he case before us today concerns a municipal decision requiring the consideration of basic policy and the exercise of independent judgment. The factors involved in determining the necessity or advisability of installing traffic control devices include the regulation of traffic patterns and traffic flow at the specific location and in surrounding areas, fiscal priorities, safety, and various engineering considerations. Thus, the decision to install or to forgo traffic control devices at a particular intersection is a planning function, involving basic policy considerations and the exercise of a high degree of official discretion.
Id. at 384.
{¶ 15} We applied these principles from Reynolds and Winwood to ODOT’s decisions regarding the improvement of public highways in Garland v. Ohio Dept. of Transp., 48 Ohio St.3d 10, 548 N.E.2d 233 (1990). In Garland, the plaintiff claimed that ODOT was negligent in delaying the installation of a traffic signal. Applying our holding in Winwood, we held: “A governmental entity is immune from tort liability when it makes a decision as to what type of traffic control signal to install at an intersection.” Id. at paragraph one of the syllabus. We further held that ODOT’s decision of when to install the traffic signal also required the exercise of discretion and that ODOT accordingly had a reasonable amount of time to implement its decision once it was made. Id. at 12 and paragraph two of the syllabus.
{¶ 16} Taken together, Winwood and Garland establish a concrete set of principles to apply in deciding whether an entity exercised discretion in its decision regarding improving highways. Winwood establishes that whether to improve a highway is a protected decision. Under Winwood, both the decision to improve a highway and the decision not to improve a highway are protected. Garland adds that the decision of what type of improvement to make is also a protected decision, as is the decision of when to make the improvement, as long as it is made within a reasonable time.
{¶ 17} Based on Winwood and Garland, it is clear that in this case, ODOT made three decisions protected by the discretionary-function doctrine: (1) its decision to improve a particular portion of the intersection, (2) its decision not to improve other portions of the intersection, and (3) its decision regarding what *61 type of improvement — i.e., advance-warning signs and red and yellow flashing lights — to make to the intersection. Each of these decisions entailed the exercise of a planning function involving the making of a basic policy decision characterized by the exercise of a high degree of official judgment and discretion.
{¶ 18} ODOT’s expertise in highway design and construction and its understanding of the vast network of highways throughout the state, together with the fact that it is statutorily authorized to improve the state’s highways, make it the foremost authority on the subject of highway improvements. The current framework of Ohio law prevents the judicial branch from second-guessing ODOT’s decisions in this regard. We accordingly hold that ODOT is immune from any liability for damages resulting from those decisions.

B. ODOT’s decision to improve one portion of a highway does not trigger a duty to improve surrounding portions of the highway

{¶ 19} ODOT’s immunity precludes it from liability for damages arising from its decisions that are characterized by the exercise of a high degree of official judgment and discretion. The Risners argue, however, that immunity does not protect ODOT’s actions in this case.
{¶ 20} The Risners argue that once ODOT decides to improve a portion of a highway, it is not immune from liability for damages arising from its determination of how to implement its decision. Amicus curiae, the Ohio Association for Justice, builds upon this argument by asserting that after choosing to improve a portion of a highway, ODOT has a duty to make the highway around that specific area of improvement safe under current safety standards.
{¶ 21} The Risners are correct that this court has not held that ODOT’s determination of how an improvement is implemented is immune from liability. In Anderson v. Ohio Dept. of Ins., 58 Ohio St.3d 215, 218, 569 N.E.2d 1042 (1991), overruled in part on other grounds by Wallace v. Ohio Dept. of Commerce, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, we held:
[E]ven though a discretionary decision is immune from suit, the implementation of that decision can be carried out in a negligent manner. When carrying out the mandates of a public employer, the actions of the agents or employees of that employer are distinguishable from the original decision to take action and thus could be actionable.
We applied Anderson in Semadeni v. Ohio Dept. of Transp., 75 Ohio St.3d 128, 661 N.E.2d 1013 (1996). In Semadeni, ODOT adopted Policy 1005.1, which provided for the construction of fencing on existing bridges, but its full implementation of that policy was delayed. Id. at 129-130. In holding that ODOT was not *62 immune from liability for damages arising from its failure to fully implement that policy, we explained, “[Ajdoption of Policy 1005.1 in 1985 was a ‘basic policy decision,’ and * * * ODOT failed to implement Policy 1005.1 within a reasonable amount of time. The Court of Claims erred in its legal conclusion that subsequent ‘time and manner’ decisions made to implement Policy 1005.1 were themselves entitled to immunity.” Id. at 132.
{¶ 22} We declined in Anderson and Semadeni to hold that the state or a state agency is immune from liability for damages arising from its determination of how to implement its decision. This does not mean, however, that ODOT is liable in this case. As we explained, this case does not turn upon how ODOT chose to implement a decision. Instead, we are concerned with three separate decisions made by ODOT: its decision to improve one portion of the highway, its decision not to improve other portions of the highway, and its decision regarding the type of improvement to make.
{¶ 23} Although ODOT argues in its brief that it makes policy decisions when it determines how to remedy a particular stretch of highway, its argument in support of this assertion echoes Garland’s holding that a governmental entity is immune from tort liability when it decides what type of improvement to make. Because Winwood and Garland provide ample guidance for analyzing the issues present in this case, we decline today to expand our application of the discretionary-function doctrine to include immunity for ODOT’s determination of how to implement its decision. Instead, we reaffirm our prior holdings establishing ODOT’s immunity from liability for damages arising from its decisions whether to improve or not to improve certain portions of highway and what type of highway improvement to make.
{¶ 24} We emphasize that although ODOT has immunity for the decisions themselves, Anderson and Semadeni provide that it is not immune from liability for damages resulting from negligence that occurs in implementing those decisions. Thus, while ODOT is immune from any liability arising from the decisions made pursuant to its discretionary function, immunity does not extend beyond that discretionary function to acts of implementation. ODOT has a duty to properly implement its discretionary decisions. It may be subject to liability if it fails to abide by current construction standards or otherwise acts negligently in executing a decision to improve an existing highway. For instance, if ODOT negligently constructs a particular highway improvement or causes damage either to that portion or surrounding portions of the highway, it may be subject to liability for failing to execute its decision in a proper manner.
{¶ 25} In this case, the Risners argue that ODOT made policy decisions to improve the intersection and that “[t]he manner that ODOT chose to implement these policies * * * did nothing to improve sight distance or ensure the intersec *63 tion complied with its written sight distance standards.” This argument does not assert that ODOT executed its decision in a negligent manner. Instead, it attacks the very decision itself. Rather than argue that ODOT acted negligently in installing the advance-warning signs and red and yellow flashing lights in violation of its duty to execute its decision in accordance with current standards, the Risners argue that the decision to install these improvements failed to improve the safety of the intersection. Because this argument challenges ODOT’s discretionary function rather than its duty to execute its decisions in a proper manner, it is not necessary to apply Anderson or Semadeni to this case.
{¶ 26} We also decline to adopt the Ohio Association for Justice’s position that once ODOT decides to improve a specific part of a highway, it has a duty to improve the areas surrounding it. As Winwood shows, ODOT’s decision to improve a portion of a highway is a basic policy decision characterized by the exercise of a high degree of official discretion. Just as this decision to improve a portion of highway is entitled to immunity, the decision not to improve surrounding areas is also entitled to immunity. Applying the discretionary-function doctrine, we hold that ODOT is immune from liability for damages resulting from its decisions at issue in this case.
III. Conclusion
{¶ 27} In determining whether to improve an existing highway, the Ohio Department of Transportation is immune from liability for damages arising from its decisions regarding which portions of a highway it will improve and what type of improvement it will make. The Ohio Department of Transportation’s decision to improve a specific portion of highway does not trigger a duty to improve surrounding sections of the highway. When the Ohio Department of Transportation decides to improve an existing highway, it has a duty to execute that decision in accordance with current construction standards. We reverse the decision of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
O’Connor, C.J., and O’Donnell and Kennedy, JJ., concur.
Pfeifer, French, and O’Neill, JJ., dissent.

. The parties use the terms “highway” and “roadway” interchangeably in their briefs. R.C. 5501.01(A) provides that “ Toad’ or ‘highway’ includes all appurtenances to the road or highway.” For ease of discussion, we use “highway” throughout this opinion to refer to both roads and highways.

. We note that the precise definition of the phrase “discretionary-function doctrine” may vary among jurisdictions. For example, the federal discretionary-function doctrine
generally arises in the context of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), (the “FTCA”), where Congress provided that the waiver of sovereign immunity by the United States does not extend to “[a]ny claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.” 28 U.S.C. 2680(a).
Mays v. Tennessee Valley Auth., 699 F.Supp.2d 991, 1006 (E.D.Tenn.2010).